184 P.3d 1064 (2008)
2008-NMCA-067
STATE of New Mexico, Plaintiff-Appellee,
v.
Eric RAEL, Defendant-Appellant.
No. 26,737.
Court of Appeals of New Mexico.
March 27, 2008.
Certiorari Granted May 16, 2008.
*1065 Gary K. King, Attorney General, Santa Fe, NM, James W. Grayson, Assistant Attorney General, Albuquerque, NM, for Appellee.
John Bigelow, Chief Public Defender, Jason C. Gordon, Assistant Appellate Defender, Santa Fe, NM, for Appellant.
Certiorari Granted, No. 31,065, May 16, 2008.

OPINION
WECHSLER, Judge.
{1} Defendant Eric Rael appeals his conviction after a jury trial for aggravated assault with a deadly weapon in violation of NMSA 1978, § 30-3-2(A) (1963). He raises three issues on appeal, each related to his competency to stand trial. Defendant contends that (1) the district court abused its discretion when it found that he was competent to stand trial, (2) the district court erred in refusing to submit the issue of competency to the jury, and (3) the district court abused its discretion when it denied his motion to reconsider his competency prior to beginning his trial. We hold that the district court was not required to accept the opinion of Defendant's expert as to Defendant's competency and that (1) there was sufficient evidence of Defendant's competency to stand trial; (2) because there was no new evidence, the district court complied with Rule 5-602(B)(2) NMRA in deciding the issue of Defendant's competency without submitting it to the jury; and (3) the district court did not err in denying Defendant's motion to reconsider. We affirm Defendant's conviction.
BACKGROUND AND FACTS
{2} Following an incident at the home of his former girlfriend on September 18, 2004, Defendant was charged in district court with aggravated assault with a deadly weapon. Upon Defendant's motion, the district court ordered a psychological examination of Defendant to determine his competency to stand trial. The examination was conducted by Dr. Will Parsons in November 2004, and Dr. Parsons' report was issued in January *1066 2005. Among other findings, Defendant's full-scale I.Q. score was determined to be sixty-eight, and Dr. Parsons recommended that he be found not competent to stand trial.
{3} A hearing on the competency issue was held on May 16, 2005. Dr. Parsons testified as an expert consistent with his evaluation, opining that Defendant had mild mental retardation and was not competent to stand trial. The State's only witnesses were the general manager and an assistant manager of the Pizza Hut at which Defendant had worked as a dishwasher and a cook for the previous two years. The district court ruled that Defendant was competent, finding that he had not rebutted the presumption of competence and that the State had rebutted the presumption of mental retardation as set forth in NMSA 1978, § 31-9-1.6(E) (1999).
{4} Defendant's jury trial took place on February 1, 2006. At a bench conference before jury selection on the morning of his trial, Defendant moved for a reconsideration of the district court's finding of competence following the May 16, 2005 hearing. At trial, Defendant's counsel stated, "After talking to my client at length yesterday, he understands nothing. He has no idea what's going on." Defendant's written motion stated that "[d]espite counsel's best efforts, [D]efendant was unable to understand the trial process, the charges against him, [and] the consequences of a trial or of a plea" and that "[D]efendant [was] completely unable to consult with his attorney with a reasonable degree of rational understanding because of his inability to comprehend these proceedings." Citing Rule 5-602, Defendant's counsel also orally requested that if the court proceeded with the trial, a jury should determine Defendant's competency. Defendant's counsel further noted that she had requested Dr. Parsons' presence, although apparently he had not yet arrived. The district court denied the motions but allowed Defendant's counsel to raise the issue again later.
{5} During a break after the State's opening statement, Defendant's counsel again moved for a jury determination of Defendant's competency to stand trial and also filed a written motion in open court. That motion made the same allegations as set forth above regarding Defendant's ability to understand the proceedings and consult with his attorney. The motion asserted that the evidence that Defendant sought to present on the issue of competency would "raise a reasonable doubt as to [his] competency to stand trial." Citing Rule 5-602(B)(2)(b), the motion requested that the jury hear testimony regarding Defendant's competency and that the district court rule as to whether the jury should determine Defendant's competency. Defendant's counsel informed the district court that if the motion were heard, Dr. Parsons and Defendant would testify. The judge stated that he had reviewed his notes from the May 16, 2005 competency hearing and noted that Defendant had been able to obtain a driver's license and had attended school through the eleventh grade. The judge ruled that Defendant was competent without hearing testimony on the issue. The judge also ruled that Dr. Parsons could not be called at trial, citing Rule 5-502(A)(3) NMRA, which requires witnesses to be disclosed not less than ten days before trial. At the conclusion of the trial, the jury, not instructed on the issue of competency, found Defendant guilty.
FINDING OF COMPETENCE TO STAND TRIAL
{6} "[A] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." State v. Flores, 2005-NMCA-135, ¶ 15, 138 N.M. 636, 124 P.3d 1175 (internal quotation marks and citation omitted). "[I]t is a violation of due process to prosecute a defendant who is incompetent to stand trial." Id. ¶ 16 (alteration in original) (internal quotation marks and citation omitted). A defendant is presumed competent to stand trial and bears the burden of demonstrating incompetence by a preponderance of the evidence. State v. Chapman, 104 N.M. 324, 327-28, 721 P.2d 392, 395-96 (1986). If the district court finds reasonable doubt as to competency, the issue is submitted to a jury. State v. Duarte, 1996-NMCA-038, ¶ 13, 121 N.M. 553, 915 P.2d 309. "In deciding the reasonable-doubt *1067 question, the [district court] judge weighs the evidence and draws his or her own conclusions from that evidence." Id. On appeal, we review the district court's determination "only for an abuse of discretion, viewing the evidence in the light most favorable to the judge's decision." Id. A district court abuses its discretion when its ruling is "clearly against the logic and effect of the facts and circumstances of the case." State v. Lasner, 2000-NMSC-038, ¶ 16, 129 N.M. 806, 14 P.3d 1282 (internal quotation marks and citation omitted).
{7} At the May 16, 2005 competency hearing, approximately eight months before Defendant's trial, Dr. Parsons testified as an expert and opined that Defendant was incompetent to stand trial. Among his findings were that Defendant's full-scale I.Q. score was sixty-eight and that Defendant met the criteria for a diagnosis of mild mental retardation. Dr. Parsons did not test Defendant's I.Q. during the course of his November 2004 evaluation; rather, that score had been determined after a previous evaluation in 2001. Although Defendant notes that "[a]n intelligence quotient of seventy or below on a reliably administered intelligence quotient test shall be presumptive evidence of mental retardation," Section 31-9-1.6(E), we are not aware of any statutory or case law that directs that a person found to have mild mental retardation is necessarily incompetent to stand trial, and Defendant does not make such an argument on appeal.
{8} In support of his argument that the district court erred in finding him competent to stand trial, Defendant points out that he presented expert testimony at the competency hearing but that the State presented only two managers from Defendant's place of employment. However, Defendant concedes that a court as factfinder may reject expert testimony, even when the opposing party has not countered with expert testimony of its own. See State v. Jason F., 1998-NMSC-010, ¶ 29, 125 N.M. 111, 957 P.2d 1145 (holding that, on the issue of the defendant's competence at the time of his confession, the district court was permitted to reject the expert testimony of a psychiatrist and a psychologist in favor of that of a detective who interviewed the defendant).
{9} Although Dr. Parsons believed that Defendant was incompetent to stand trial, his report and testimony reveal several bases for the district court to conclude otherwise. During the course of the evaluation, Dr. Parsons asked Defendant questions concerning his understanding of the charges against him and the potential consequences. Defendant was able to state the charge against him. He also knew that it was a felony and that a felony was more serious than a misdemeanor. He believed that if he were found guilty he would go to jail, possibly for a year. He described probation as being "out of jail and you have to go see somebody," and he was aware that a condition of probation was "staying out of trouble." He did not understand the concept of not guilty by reason of insanity, but when subsequently asked what pleas he could enter in court, he suggested guilty or not guilty and then asked if he could plead not guilty by reason of insanity.
{10} Dr. Parsons also probed Defendant's understanding of the trial process. Defendant was able to point to six of seven courtroom participants in a picture of a typical courtroom. Although Defendant did not understand the role of the district attorney, he knew that the defense attorney worked for him and knew the function of the judge. He "expressed uncertainty" about the role of the jury, but when it was explained to him, he appeared to understand "at a very basic level." He stated that witnesses would "tell what happened." He did not know that he was not required to testify himself. He did not know the meaning of "authority," he was confused by certain terminologysuch as the use of prosecutor, district attorney, and DA to refer to the same personand he could not explain the difference between a bench trial and a jury trial.
{11} Finally, Dr. Parsons questioned Defendant to determine his ability to consult with his attorney. Defendant recalled the last name of his attorney in another case, but he could not name his attorney in the present case. Defendant did not understand the term "confidence" when asked if he had confidence in his attorney, but after it was explained, *1068 he said, "I think she's a pretty good lawyer." He did not understand the concept of confidentiality even when it was explained to him. He demonstrated some awareness that he should tell his attorney everything that he knew or remembered and that he should tell his attorney if there was something that he did not understand. He knew the basics of courtroom decorum, such as not speaking or moving around without permission. In summarizing this section of his evaluation, Dr. Parsons wrote, "Based on this information, it is likely that [Defendant] would be able to relate to his attorney and provide her with limited appropriate information during the course of the trial process. He is likely to have difficulty in making decisions or discerning the differences between potential plea agreements." In summarizing the three areas of inquiry into Defendant's understanding of the legal process, Dr. Parsons wrote the following:
[Defendant] demonstrated poor understanding of the trial process, the charges against him, the potential consequences, and of his relationship to his attorney. He also lacks clear understanding of the adversarial nature of the trial process. Because of these problems, it is this examiner's recommendation to the Court that [Defendant] be found not competent to stand trial or enter a plea in any matter before the court.
{12} Dr. Parsons' testimony at the competency hearing was consistent with his written report. He explained that he had not performed an I.Q. test during the current evaluation, as he had also evaluated Defendant in 2001. At that time, Dr. Parsons found Defendant's full-scale I.Q. score to be sixty-eight, and he testified that a person's I.Q. tends not to change over time. He also noted that the consistency between certain other test results from the current evaluation with the same tests given in 2001 supported his conclusion that Defendant's I.Q. had not changed. He acknowledged that a person's I.Q. may vary by three to six points over time but that it was statistically more common for a person's I.Q. to decrease over time rather than increase. Dr. Parsons testified that the anticipated testimony of the State's witnesses that Defendant had performed well at his job at Pizza Hut would not change his opinion, because people who have mild mental retardation are often able to perform well at menial, habit-bound work.
{13} The State presented the general manager and an assistant manager from the Pizza Hut where Defendant worked as its only witnesses at the competency hearing. The general manager testified that Defendant had worked at Pizza Hut for approximately two years. In making staffing decisions, the general manager tried to group Defendant with the same people. While the general manager initially had to shadow Defendant constantly, Defendant, over time, improved at what he did and seemed more relaxed and comfortable. Defendant asked questions when he was unsure of what was expected of him. Because Defendant did not show much emotion while he was being instructed, the general manager determined whether Defendant was able to understand instructions by the outcome of the assigned task. On cross-examination, the general manager testified that Defendant worked as a pre-cook, pre-assembling menu items. When asked about the need to initially shadow Defendant, the general manager testified that it had been necessary for "months," while for the average person only about a week was necessary.
{14} Next, the assistant manager of the Pizza Hut testified that Defendant had good relationships with his co-workers, although she did not know how he interacted with people when he was not working. She had never seen Defendant express anger, argue with co-workers, or act irrationally. She and others had regularly conversed with Defendant about non-work-related topics. She had seen Defendant smiling, laughing at jokes, and participating in jokes with other employees. Finally, the assistant manager testified that Defendant sometimes displayed a blank look on his face when he was asked to do something and that it often took him some time to understand what he was being told.
{15} Under our standard of review, the evidence was sufficient to support the district court's ruling that Defendant failed to meet his burden of proving incompetence to stand trial. Dr. Parsons' evaluation report and *1069 testimony indicate that Defendant had an understanding of the charges against him and that he could go to jail if he were found guilty. Defendant (1) was able to identify six of seven courtroom participants when he was shown a picture of a typical courtroom; (2) knew that witnesses would testify as to what happened; and (3) understood that the defense attorney worked for him, that he should tell her what he remembered about the incident, and that he should tell her if he did not understand something. For certain concepts, such as whether he had "confidence" in his attorney, Defendant appears not to have displayed an initial understanding, but he understood the concepts when they were explained to him in other terms. The testimony also showed that Defendant functions reasonably well in daily life, since he had held the same job for two years, regularly engaged in social interactions with his co-workers, progressed through the eleventh grade in school, and obtained a driver's license. The testimony showed that while Defendant is slow to understand new information, he eventually absorbs enough to function independently. The overall picture that the testimony depicted is that Defendant is a person who has significant limitations but who is ultimately competent to stand trial.
{16} The district court also ruled that the State adequately rebutted the presumption that Defendant, because his I.Q. was determined to be less than seventy, had mild mental retardation. See § 31-9-1.6(E). There is some evidence to support the district court's ruling, such as the expert's acknowledgment that a person's I.Q. could vary by three to six points and the fact that the I.Q. test was done as part of an earlier evaluation approximately three years before the present one. Because a finding of mental retardation does not necessarily require that a person also be found incompetent to stand trial, we consider the district court's ruling on the State's rebuttal of the presumption of mental retardation unessential to our decision on whether the district court abused its discretion in ruling that Defendant was competent to stand trial. Thus, we express no opinion on the question of whether Defendant had mild mental retardation and conclude that the district court did not abuse its discretion in finding that Defendant was competent to stand trial after the hearing on May 16, 2005.
SUBMISSION OF COMPETENCY ISSUE TO THE JURY
{17} The question of whether the issue of Defendant's competency should have been submitted to the jury is controlled by Rule 5-602(B)(2). That rule states as follows:
(2) The issue of the defendant's competency to stand trial shall be determined by the judge, unless the judge finds there is evidence which raises a reasonable doubt as to the defendant's competency to stand trial.
(a) If a reasonable doubt as to the defendant's competency to stand trial is raised prior to trial, the court shall order the defendant to be evaluated as provided by law. Within sixty (60) days after receiving an evaluation of the defendant's competency, the court, without a jury, may determine the issue of competency to stand trial; or, in its discretion, may submit the issue of competency to stand trial to a jury, other than the trial jury.
(b) If the issue of the defendant's competency to stand trial is raised during trial, the trial jury shall be instructed on the issue. If, however, the defendant has been previously found by a jury to be competent to stand trial, the issue of the defendant's competency to stand trial shall be submitted to the trial jury only if the court finds that there is evidence which was not previously submitted to a jury which raises a reasonable doubt as to the defendant's competency to stand trial.
Id. "We review the district court's interpretation of a [Supreme Court] rule de novo." State v. Donahoo, 2006-NMCA-147, ¶ 2, 140 N.M. 788, 149 P.3d 104.
{18} The issue of Defendant's competency was raised twice before trial and again at trial. The first occasion was addressed by the competency evaluation and hearing discussed above. The district court's order after that hearing, filed about seven months before trial, found Defendant to be competent *1070 to stand trial. Defendant raised the issue again on the day of trial, once before the jury was selected and a second time after the trial began. Defendant moved for a reconsideration of his competence and requested that if the trial proceeded, the competency issue be determined by the jury pursuant to Rule 5-602(B)(2). Because the issue was raised both before and after the trial began, we analyze it under both Rule 5-602(B)(2)(a) and Rule 5-602(B)(2)(b).
{19} In this section, we address the district court's denial of Defendant's motion for a jury determination of his competency to stand trial. The related question of whether the district court erred in refusing to reconsider Defendant's competency to stand trial is addressed in the next section. Defendant's counsel raised the jury determination issue orally before voir dire began, stating as follows: "The other thing, Your Honor, is that I want to give notice to you and [the assistant district attorney], I'm going to request that if you want to go ahead with the trial that it be a jury determination of his competency. And that's allowed under 5[-]602." The district court judge responded that he was going to proceed with the trial, adding: "I'll take a look [at the rule]. I'm going to deny this Motion out of hand." The district court judge agreed that Defendant could raise the issue again later.
{20} Once the issue of competency to stand trial is raised, Rule 5-602(B)(2) first directs that the "issue of the defendant's competency to stand trial shall be determined by the judge, unless the judge finds there is evidence which raises a reasonable doubt as to the defendant's competency to stand trial." The district court had previously satisfied this portion of the rule by issuing the order finding Defendant competent to stand trial after the May 16, 2005 hearing. In that order, the district court did not specifically find that there was evidence raising a reasonable doubt. The district court's next opportunity to consider whether a reasonable doubt as to Defendant's competency to stand trial existed was after the oral motion of Defendant's counsel immediately before trial. In its oral ruling denying the motion "out of hand," the district court did not address the question of whether a reasonable doubt existed, except as may be inferred from the denial. The district court then heard arguments and ruled on Defendant's written motion for a jury determination of his competency to stand trial after the State conducted its portion of voir dire but before Defendant began. We consider this point in the proceedings to be "during trial" for purposes of Rule 5-602(B)(2)(b). See State v. Padilla, 2000-NMCA-090, ¶ 17, 129 N.M. 625, 11 P.3d 589 ("[A] jury trial commences when jury selection begins."), aff'd on other grounds, 2002-NMSC-016, 132 N.M. 247, 46 P.3d 1247.
{21} We first observe that if a defendant's competency to stand trial is properly raised during trial, the district court cannot refuse to hear testimony or evidence relating to competency simply because it was not disclosed ten days before trial under Rule 5-502(A)(3). Thus, the district court improperly relied on Rule 5-502(A)(3) as a basis for refusing to allow Dr. Parsons to testify. However, as we explain, the district court did not commit reversible error in making its ultimate determination not to submit Defendant's competency to the jury.
{22} In our interpretation of Rule 5-602(B)(2), Defendant suggests that we revisit Duarte, 1996-NMCA-038, ¶ 13, 121 N.M. 553, 915 P.2d 309 and State v. Nelson, 96 N.M. 654, 656, 634 P.2d 676, 678 (1981), both of which state in passing that any right to a jury determination of a defendant's competency to stand trial arises only upon the establishment of a reasonable doubt as to competency. Defendant argues that the statements in Duarte and Nelson conflict with the plain language of Rule 5-602. We disagree. The first sentence of Rule 5-602(B)(2)(b) states, "If the issue of the defendant's competency to stand trial is raised during trial, the trial jury shall be instructed on the issue." Standing alone, this sentence would seem to directly contradict the first portion of Rule 5-602(B)(2), which directs that a defendant's competency shall be determined by the judge and does not limit its directive to any particular time frame, such as before or after a trial has begun. Read in its entirety, the full sentence of Rule 5-602(B)(2) places a limit on its own applicability *1071 to only those situations in which "the judge finds there is evidence which raises a reasonable doubt as to the defendant's competency to stand trial." That is, if there is no evidence raising a reasonable doubt, the judge must decide whether a defendant is competent to stand trial. If there is such evidence, other options become available. These other options exist in Rule 5-602(B)(2)(a)-(b), and the choice depends on when the issue is raised. Thus, even though Rule 5-602(B)(2)(b) does not mention the requirement of reasonable doubt as to competency, the requirement is implied by both the subordinate position of Subsection (b) under Rule 5-602(B)(2) and the fact that there would be a direct internal contradiction in the rule without the requirement. See State v. Stephen F., 2006-NMSC-030, ¶ 17, 140 N.M. 24, 139 P.3d 184 (explaining that the subsections of a Supreme Court rule must be read "in context with the whole rule," not "in a vacuum"). Furthermore, if a requirement of reasonable doubt were not read into Rule 5-602(B)(2)(b), any defendant would be able to raise the issue of competency and have the jury decide it even in the absence of the slightest bit of evidence that the defendant was incompetent. Such a result would be contrary to our well-established guidelines regarding the interpretation of Supreme Court rules. See, e.g., Walker v. Walton, 2003-NMSC-014, ¶ 11, 133 N.M. 766, 70 P.3d 756 ("We interpret the Rules of Criminal Procedure with logic and common sense to avoid absurd results.").
{23} Because we conclude that Rule 5-602(B)(2)(b) requires a finding of reasonable doubt as to a defendant's competence to stand trial before the jury must be instructed on the issue, it follows that the district court was correct in refusing to submit the issue to a jury, unless it abused its discretion in failing to find reasonable doubt. We first note that the district court explicitly made a finding that there was no reasonable doubt in its oral ruling on Defendant's motion for a jury determination of his competence and that the finding appears in the district court's written order. In arguing Defendant's motion, Defendant's counsel did not inform the district court of any new evidence relevant to Defendant's competency to stand trial other than her own experience in communicating with Defendant. The record indicates that Dr. Parsons had re-interviewed Defendant for about thirty minutes at some point before trial. But Defendant's counsel made no assertion or offer of proof that as a result of the interview Dr. Parsons would testify that Defendant's condition had changed from the May 16, 2005 competency hearing that would raise a reasonable doubt regarding Defendant's competency. Thus, other than evidence that it had already considered, the district court had nothing before it except the assertion of Defendant's counsel that she could not satisfactorily communicate with Defendant.
{24} In Flores, we addressed a situation in which the defendant's counsel informed the court on the day of trial that the defendant was unable to consult with counsel or understand the proceedings. Flores, 2005-NMCA-135, ¶¶ 7-8, 138 N.M. 636, 124 P.3d 1175. In that case, just before trial, the defendant's counsel asked the court to find that the defendant was incompetent to stand trial. Id. ¶ 7. The defendant's counsel cited her own experience with the defendant as the basis of the request, stating her belief that his condition had deteriorated because he had been held in isolation since the competency hearing. Id. ¶ 8. We held that while "a court may consider defense counsel's observations and opinions, . . . those observations and opinions alone cannot trigger reasonable doubt about the defendant's competency." Id. ¶ 29. We also acknowledged that the testimony of experts is not required to support a contention of incompetency and stated the following: "Instead, a defendant could offer an affidavit from someone who has observed the defendant and formulated an opinion about his or her competency, such as a corrections officer or defense counsel's paralegal." Id. ¶ 31.
{25} We conclude that (1) the district court had no new evidence or offer of new evidence before it other than the assertions of Defendant's counsel regarding Defendant's understanding of the proceedings and (2) Rule 5-602(B)(2) did not require the question of Defendant's competency to stand trial to be submitted to the jury unless the district *1072 court found a reasonable doubt as to his competency. Therefore, the district court did not abuse its discretion in declining to submit the issue to the jury.
MOTION TO RECONSIDER COMPETENCY
{26} Defendant finally argues that the district court abused its discretion in denying his motion to reconsider his competency to stand trial. As we have discussed, on the day of Defendant's trial, the district court was provided with nothing new on the issue of Defendant's competency to stand trial other than the assertions of Defendant's counsel that Defendant had "no idea" what was happening. As also discussed above, under Flores, those assertions are insufficient to raise the reasonable doubt necessary under Rule 5-602(B)(2)(b) to require a jury determination of Defendant's competency to stand trial. Accordingly, we also conclude that it was reasonable for the district court to deny Defendant's motion for reconsideration of his competency to stand trial. That is, when the district court was presented with no new evidence and no persuasive reason as to why its previous ruling was incorrect, it did not abuse its discretion in declining to reconsider its ruling.
CONCLUSION
{27} The district court did not abuse its discretion in finding Defendant competent to stand trial after the hearing on May 16, 2005, and it did not abuse its discretion in declining to subsequently reconsider its ruling at Defendant's trial. The district court also did not err in refusing to submit the issue of Defendant's competency to the trial jury. We affirm.
{28} IT IS SO ORDERED.
WE CONCUR: LYNN PICKARD and MICHAEL E. VIGIL, Judges.