This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of non-precedential dispositions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date:  December 1, 2016**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                              NO.  **S-1-SC-34576**

**ALBERT JOSE RAMIREZ,**

    Defendant-Appellant.


**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Teddy L. Hartley, District Judge**


Bennett J. Baur, Chief Public Defender
Steven James Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant


Hector H. Balderas, Attorney General
Yvonne M. Chicoine, Assistant Attorney General
Santa Fe, NM

for Appellee

**DECISION**

**MAES, Justice.**

{1}    In Albert Jose Ramirez' (Defendant) first appeal to this Court, we reversed Defendant's conviction and remanded to the district court for further proceedings because the district court failed to ascertain on the record that Defendant's plea was knowing, intelligent, and voluntary. *See State v. Ramirez*, 2011-NMSC-025, ¶ 21, 149 N.M. 698, 254 P.3d 649.  Following the remand, Defendant was found competent to stand trial.  A jury convicted Defendant of first-degree willful and deliberate murder and tampering with evidence.  The district court sentenced Defendant to life imprisonment plus six years.

{2}    In his direct appeal, Defendant raises seven issues and seeks reversal of his convictions and a remand for a new trial.  This Court exercises appellate jurisdiction where life imprisonment has been imposed.  *See* N.M. Const. art. VI, § 2; *see also* Rule 12-102(A)(1) NMRA (2000).  We affirm the district court's judgment, sentence, and commitment.  Because Defendant raises no questions of law that New Mexico precedent does not already sufficiently address, we issue this nonprecedential decision pursuant to Rule 12-405(B)(1) NMRA.

**I.    FACTS AND PROCEDURAL HISTORY**

{3} Defendant went to his mother's house on July 12, 2007, after calling the house 30 to 40 times with no answer. Defendant believed that his mother's live-in boyfriend, Eladio Robledo, was preventing Defendant's mother from helping Defendant because Robledo "liked to see [Defendant] suffering." After checking the front door and not getting an answer, Defendant went to the back of the house and followed Robledo as he left the house and entered the garage.

{4} After an argument ensued between the two men, Defendant shot Robledo and chased him to the front of the house. When Robledo fell, Defendant stepped over him and shot him twice in the head. Sam Saiz, a neighbor, and Grace Finkey, a passing motorist, both witnessed the Defendant shoot Robledo. Defendant then disposed of his gun and the denim shorts he was wearing in a dumpster. The State charged Defendant with one count of willful and deliberate murder and two counts of tampering with evidence. Defendant entered a guilty plea and appealed his conviction to this Court.

{5} In his first appeal to this Court, we held that Defendant's guilty plea was not entered into voluntarily because the district court failed to ascertain on the record that Defendant's plea was knowing, intelligent, and voluntary. *See Ramirez*, 2011-NMSC-025, ¶ 21. We reversed the district court's judgment of conviction and

remanded for further proceedings. *See id.*

**{6}** In September 2011, following the remand order from this Court, the district court ordered Defendant to undergo a third confidential forensic evaluation to determine his competency to stand trial. The forensic evaluator, Dr. Richard T. Fink, was not able to render an opinion at that time because Defendant refused to communicate with him. On other occasions, Defendant had refused to talk to his counsel and to the district court. The district court ordered a fourth forensic evaluation after which Dr. Fink determined that Defendant was competent to stand trial. Based on Dr. Fink's report, the district court found that Defendant was competent to stand trial.

**{7}** In October 2013, following a jury trial, Defendant was found guilty of first-degree murder and two counts of tampering with evidence. The district court imposed a sentence of life imprisonment plus six years. We include additional facts in the discussion of Defendant's issues on appeal.

**{8}** In a direct appeal of his conviction to this Court, Defendant argues: (1) the district court erred when it denied Defendant a reevaluation of his competency to stand trial; (2) Defendant received ineffective assistance of counsel; (3) there was improper commentary on Defendant's right to silence; (4) Defendant was prejudiced

by the jury seeing his leg restraints; (5) the court abused its discretion in admitting prior bad acts; (6) the court abused its discretion by not declaring a mistrial; and (7) there was insufficient evidence to support two counts of tampering with evidence. We do not address the issue of sufficiency of the evidence to support tampering because it has been abandoned by counsel. *See State v. Correa*, 2009-NMSC-051, ¶ 31, 147 N.M. 291, 222 P.3d 1.

## II.    STANDARD OF REVIEW

{9}    Because the standard of review for each issue presented is distinct, we address each standard in the corresponding discussion section.

## III.    DISCUSSION

### A.    The district court did not err when it denied Defendant a reevaluation of his competency to stand trial

{10}    Defendant argues that the district court erred when it denied his motion prior to trial and two motions during trial for a reevaluation of his competency to stand trial. The State argues that at no time did Defendant meet the burden of proof necessary for another court-ordered evaluation.

### 1.    Standard of Review

{11}    Defendant argues that the district court's denial of a reevaluation of competency denied Defendant due process of law and is therefore subject to de novo

5

review. The State argues that the standard of review for competency determinations is abuse of discretion because the district court afforded Defendant all the due process that was required. Additionally, the State argues that Defendant did not preserve his claim that the court abused its discretion in finding that Defendant was competent. {12}

De novo review is applied when the district court fails to provide a defendant notice or an opportunity to be heard on the issue of his competency. *See, e.g., State v. Gutierrez*, 2015-NMCA-082, ¶ 7, 355 P.3d 93 (applying de novo review because defendant was deprived of due process where the judge held a competency hearing on its own motion, without notice or an opportunity to be heard by the parties, and entered a finding that Defendant was competent); *State v. Montoya,* 2010-NMCA-067, ¶¶ 10-11, 15-16, 148 N.M. 495, 238 P.3d 369 (applying de novo review because judge's refusal to hear the defense's position on competency and immediate continuation of trial without consideration of any evidence regarding defendant's competency was a violation of due process).

{13} However, we review the denial of a motion for a competency evaluation for an abuse of discretion. *State v. Herrera*, 2001-NMCA-073, ¶ 31, 131 N.M. 22, 33 P.3d 22. "A trial court abuses its discretion when a ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Lasner*, 2000-NMSC-038,

¶ 16, 129 N.M. 806, 14 P.3d 1282 (internal quotations and citation omitted). In applying this standard, we view the evidence in the light most favorable to the judge's decision. *See State v. Lopez*, 1978-NMSC-060, ¶ 7, 91 N.M. 779, 581 P.2d 872.

**2. The district court did not abuse its discretion in denying Defendant's motion for a subsequent evaluation of competency**

{14} Because a defendant is presumed competent to stand trial, he bears the burden of demonstrating incompetency by a preponderance of the evidence. *See State v. Chavez,* 2008-NMSC-001, ¶ 11, 143 N.M. 205, 174 P.3d 988; *see also State v. Rael,* 2008-NMCA-067, ¶ 6, 144 N.M. 170, 184 P.3d 1064 (citation omitted). In New Mexico, the procedure for determining a defendant's competency to stand trial is defined in NMSA 1978, Sections 31-9-1 through 31-9-4 (1967, as amended through 1999) and Rule 5-602 NMRA. Rule 5-602(B)(1) provides: "[t]he issue of the defendant's competency to stand trial may be raised . . . at any stage of the proceedings." Section 31-9-1 states that "[w]henever it appears that there is a question as to the defendant's competency to proceed in a criminal case, any further proceeding in the cause shall be suspended until the issue is determined." Once an issue of competency to stand trial has been raised, the judge must determine whether there is "evidence which raises a reasonable doubt as to the defendant's competency to stand trial." Rule 5-602(B)(2); *see also State v. Noble*, 1977-NMSC-031, ¶ 7, 90

7

N.M. 360, 563 P.2d 1153. "In deciding the reasonable-doubt question, the judge weighs the evidence and draws his or her own conclusions from that evidence." *State v. Duarte*, 1996-NMCA-038, ¶ 13, 121 N.M. 553, 915 P.2d 309 (citation omitted).

**{15}** "If a reasonable doubt as to the defendant's competency to stand trial is raised *prior to trial*, the court shall order the defendant to be evaluated as provided by law." Rule 5-602(B)(2)(a) (emphasis added). "If the issue of the defendant's competency to stand trial is raised *during trial*, the trial jury shall be instructed on the issue." Rule 5-602(B)(2)(b) (emphasis added). "That is, if there is no evidence raising a reasonable doubt, the judge must decide whether a defendant is competent to stand trial. If there is such evidence, other options become available . . . in Rule 5-602(B)(2)(a)-(b), and the choice depends on when the issue is raised." *Rael,* 2008-NMCA-067, ¶ 22. Because the issue of defendant's competency was raised both before and during trial, we must analyze Defendant's claims under both Rule 5-602(B)(2)(a) and Rule 5-602(B)(2)(b). *See Rael,* 2008-NMCA-067, ¶ 18.

**a.    Prior to trial, Defendant did not establish a reasonable doubt as to his competency**

**{16}** Defendant makes two arguments. First, Defendant argues that he raised reasonable doubt as to his competency when he spoke directly to the court and asked for a fifth forensic evaluation. One week prior to trial, despite the finding of

8

competency by Dr. Fink in January 2013, Defendant spoke directly to the court, though he was represented by counsel, and asked for a fifth forensic evaluation to determine his competency. Defendant argued that a new evaluation would show he was suffering from "psychosomatic delusions and hallucinations and severe depression and anxiety." The judge listened to Defendant's request and then denied it.

**{17}** This case is similar to *State v. Flores*, 2005-NMCA-135, 138 N.M. 636, 124 P.3d 1175. In *Flores,* the Court of Appeals addressed whether an unsupported declaration against competency made prior to trial rose to the level of reasonable doubt. In that case, just before trial, the defendant's counsel asked the court to find that the defendant was incompetent to stand trial. *See id.* ¶ 7. The defendant's counsel cited her own experience with the defendant as the basis of the request, stating her belief that his condition had deteriorated because he had been held in isolation since the competency hearing. *See id.* ¶ 8. The Court held that while "a court may consider defense counsel's observations and opinions . . . those observations and opinions alone cannot trigger reasonable doubt about the defendant's competency." *Id.* ¶ 29. The Court also concluded that the testimony of experts is not required to support a contention of incompetency, but "[i]nstead, a defendant could offer an

affidavit from someone who has observed the defendant and formulated an opinion about his or her competency, such as a corrections officer or defense counsel's paralegal." *Id.* ¶ 31.

{18}     Here, unlike in *Flores*, it was the Defendant, rather than his counsel, who argued his opinion as to his competency.  Nevertheless, Defendant did not argue that he was unable to understand the proceedings or assist his counsel, but instead stated that he suffered from mental illness.  The standard set forth in *Flores* applies equally to a defense counsel's observations of his client's competency as to the Defendant's freely given statements to the court about his competency.  *See Flores*, 2005-NMCA-135, ¶ 29 ("We read the foregoing New Mexico cases to say that a court may consider defense counsel's observations and opinions, but that those observations and opinions alone cannot trigger reasonable doubt about the defendant's competency."); *see also State v. Najar*, 1986-NMCA-068, ¶ 12, 104 N.M. 540, 724 P.2d 249 ("When a defendant or his counsel asserts the doubtfulness of that competency, the assertions must be substantiated.")  Accordingly, Defendant did not properly substantiate his assertion of incompetency.

{19}     Second, Defendant argues that because he had previously been found incompetent and eight months had passed since the most recent finding of competency

by an evaluator, he was entitled to a new evaluation because of the possibility that a person can decompensate. However, the Court of Appeals has held that while an "interval between the assessment and trial may well justify a motion for further evaluation . . . the burden remains on [d]efendant to raise a reasonable doubt as to competence with substantiated claims." *Flores*, 2005-NMCA-135, ¶ 32. Again, Defendant's general assertions that a defendant *can* decompensate did not provide support that this Defendant *did* decompensate. *See Flores,* 2005-NMCA-135, ¶¶ 28-29. Accordingly, the district court properly relied on its determination and the previous evaluation eight months prior to deny Defendant's request for a new evaluation.

{20}    The burden remains on Defendant to raise a reasonable doubt as to competency with substantiated claims. Because Defendant did not properly substantiate his assertion of incompetency, the district court did not abuse its discretion in denying Defendant's pretrial motion for a fifth forensic evaluation.

**b.    During trial, defense counsel did not establish reasonable doubt as to competency**

{21}    During trial, Defendant complained that he was too physically ill to stand trial. Defense counsel asked for a recess to allow Defendant to undergo a physical evaluation by a doctor at the detention center. The court refused to delay trial, but

11

allowed a nurse to come into the courtroom to examine the Defendant. The nurse sent a note to the court stating that the Defendant was not ill and that he was physically able to participate in the trial. The court ordered the trial to continue.

{22}     Later that morning, defense counsel moved the court for another recess and an order for an immediate reevaluation of his client's competency, as Defendant told him "he didn't understand," "doesn't know how to behave," and was "not capable of assisting [counsel] in his defense." Defense counsel reported not knowing whether Defendant was malingering or decompensating, or whether Defendant was receiving his medications. Defense counsel told the court that he could not effectively represent his client as he was labile, crying, interrupting, and making statements contrary to his interests during trial. The State objected, arguing that there was no good faith basis to require another competency evaluation particularly since Defendant had a history of malingering. The State also reminded the court that a nurse examined Defendant and concluded that despite his complaints, he was well enough to participate in the trial and this was further evidence of his pattern of malingering. The court heard more arguments from the attorneys and denied the motion.

{23}     That afternoon, defense counsel renewed his motion for a recess to have Defendant reevaluated. Defense counsel indicated his concern that Defendant was not

competent to make the choice whether or not he should testify. The court advised Defendant of his right. Defendant stated that he was mentally imbalanced and he wanted the jury to be told about his medical problems. The court found that the concerns represented personal issues not rising to the level of incompetence and denied the motion.

**{24}** Rule 5-602(B)(2)(b) requires that "[i]f the issue of the defendant's competency to stand trial is raised *during trial*, the trial jury shall be instructed on the issue." (emphasis added). The reasonable doubt requirement "is implied" under Rule 5-602(B)(2)(b) when the issue of competency is reraised at trial. *Rael,* 2008-NMCA-067, ¶ 22 ("[I]f a requirement of reasonable doubt were not read into Rule 5-602(B)(2)(b), any defendant would be able to raise the issue of competency and have the jury decide it even in the absence of the slightest bit of evidence that the defendant was incompetent. Such a result would be contrary to our well-established guidelines regarding the interpretation of Supreme Court rules."). However, in the absence of reasonable doubt, the district court need not submit the issue to the jury. *See id.* ¶¶ 22–23, 25. As such, assertions as to the question of incompetency must be properly substantiated to show reasonable doubt. *See Flores*, 2005-NMCA-135, ¶ 29 ("[A] court may consider defense counsel's observations and opinions, but that those

13

observations and opinions alone cannot trigger reasonable doubt about the defendant's competency.").

{25} Here, defense counsel merely stated his beliefs that Defendant was not capable of assisting in his own defense and that Defendant did not have the capacity to determine whether or not to testify. In response, throughout the trial, the judge did everything within his power, under the rules, to address the Defendant's concerns with his physical condition and his inability to understand the proceedings, allowing a nurse to examine him during the trial and consistently explaining to the Defendant what was happening. Accordingly, the district court did not abuse its discretion in denying Defendant's request for a forensic evaluation during trial because relying only upon his own observations, defense counsel failed to substantiate his assertions.

{26} Further, had the district court found reasonable doubt as to Defendant's competency to stand trial, Defendant would not have been entitled to a competency evaluation after the commencement of trial. Once the jury is sworn, the Defendant's only recourse is to request a jury instruction on the issue of competency. *See* Rule 5-602(B)(2)(b). Defendant failed to preserve this issue by not submitting an instruction on competency to the court or objecting to the instructions as offered. *See State v. Lujan*, 1975-NMSC-017, ¶¶ 8-9, 87 N.M. 400, 534 P.2d 1112 ("Defendant did not

14

offer an instruction on competence, nor did he object to the instructions given the jury. Therefore, this issue was not properly preserved for appeal.").

**B.      Defendant did not receive ineffective assistance of counsel**

{27}      Defendant's second argument is that he was denied effective assistance of counsel because defense counsel "lacked the necessary assistance of [Defendant] himself"; failed to "'seek the assistance of necessary experts,' and if more money was required to seek such assistance on an urgent basis counsel should have requested it" (citation omitted); and failed to obtain a reevaluation and attempted to withdraw the motions to determine competency, resulting in prejudice to Defendant.  Counsel has abandoned the claims that trial counsel failed to call other witnesses or made promises to the Defendant because these claims are unsupported by the record.  As such, we decline to review these claims.

{28}      One week prior to trial, the district court denied Defendant's motion to appoint new counsel.  Trial commenced as scheduled.  On the fourth day of trial, defense counsel informed the court of his decision not to call a witness on the record, as it was against Defendant's wishes.  Defendant then addressed the court, against counsel's advice, about how his defense had been limited, how his mental illnesses affected him, the amount of media his case was receiving, the quality of his attorney's

representation, motions he wanted filed, and other issues he indicated that he would present in his appeal.

**{29}** Defendant then demanded to be the first defense witness so he could communicate his defense. During his direct examination, Defendant refused to answer many questions directly saying he wanted to "explain everything." Defendant then attempted to dismiss his counsel in front of the jury, forcing the court to remove the Defendant and recess the trial. Later, after the parties rested, Defendant had another outburst, complaining that he had a right to know what the jury instructions would be so that he could file motions. The court told Defendant that he was being well-represented and the instructions were fair.

**{30}** At Defendant's sentencing hearing, Defendant complained to the court that his defense counsel had failed to effectively represent him and that he did not receive a fair trial. Defendant argued that the jury would not have convicted him had it fully understood that he was the victim. The district court assured Defendant that he had received excellent representation and pronounced the sentence.

**{31}** "This Court has repeatedly stated that ineffective assistance of counsel claims are best served through habeas corpus proceedings so that an evidentiary hearing can take place on the record." *State v. King,* 2015-NMSC-030, ¶ 33, 357 P.3d 949

16

(citation omitted). "Generally, only an evidentiary hearing can provide a court with sufficient information to make an informed determination about the effectiveness of counsel." *Id.*; *see also State v. Baca*, 1997-NMSC-059, ¶ 25, 124 N.M. 333, 950 P.2d 776 ("A record on appeal that provides a basis for remanding to the trial court for an evidentiary hearing on ineffective assistance of counsel is rare. Ordinarily, such claims are heard on petition for writ of habeas corpus . . . ."); *State v. Telles*, 1999-NMCA-013, ¶ 25, 126 N.M. 593, 973 P.2d 845 (stating that the "proper avenue of relief [from ineffective assistance of counsel] is a post-conviction proceeding that can develop a proper record").

{32} Though the district court repeatedly observed that defense counsel was providing excellent representation to Defendant, the court did not hold an evidentiary hearing. Therefore, the record before us is insufficient to establish that defense counsel was ineffective or that the decisions made were a plausible trial tactic or strategy. Accordingly, we reject this claim without prejudice to Defendant's ability to bring such a claim via habeas corpus proceedings.

**C.  The district court did not abuse its discretion denying a mistrial based on Deputy Loomis' commentary on Defendant's silence**

{33} Defendant's third issue is that the court erred in denying his motion for a mistrial based on an alleged improper comment about Defendant's silence after he had

17

been Mirandized. The State responds that there was no error because the court offered a curative instruction and the Defendant failed to take advantage of it.

{34} At trial, in response to a general question about his involvement in the case, Deputy Sandy Loomis explained that he had "tried to interview" Defendant when he went to Defendant's home as part of his follow-up investigation. Outside the presence of the jury, defense counsel requested that the court declare a mistrial on the basis that Deputy Loomis inappropriately commented on Defendant's Fifth Amendment right to be silent. The State argued that no error had occurred and if anything, an instruction could cure any effect the statement might have had on the jury. The district court found that neither the prosecution's question, nor Deputy Loomis' statement, suggested Deputy Loomis went to the home in search of a post-Miranda statement from Defendant. Rather, the deputy's testimony suggested an explanation of the deputy's routine role in the case. The district court denied the motion but offered to give a curative jury instruction, which the Defendant refused.

{35} A district court's denial of a mistrial is reviewed for an abuse of discretion. *See State v. Samora*, 2013-NMSC-038, ¶ 22, 307 P.3d 328. The legal question of whether there has been an improper comment on a defendant's silence is reviewed de novo. *See State v. Pacheco*, 2007-NMCA-140, ¶ 8, 142 N.M. 773, 170 P.3d 1011.

18

**{36}** "[T]he State is generally prohibited from impeaching a defendant's testimony with evidence of his silence after receiving Miranda warnings." *See Pacheco,* 2007-NMCA-140, ¶ 9. "A two-step analysis is applied. First, we must determine whether the language of the prosecutor's questions on cross-examination . . . were such that the jury would naturally and necessarily have taken them to be comments on the exercise of the right to remain silent." *Id.* ¶ 12 (internal quotation marks and citations omitted). "If the prosecutor's questions or statements constituted improper commentary on Defendant's silence, we must then determine whether there is a reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *Id.* (internal quotation marks omitted). Furthermore, in reviewing inadvertent remarks made by witnesses, generally, "the trial court's offer to give a curative instruction, even if refused by the defendant, is sufficient to cure any prejudicial effect." *Samora*, 2013-NMSC-038, ¶ 22.

**{37}** We have previously addressed this issue in *State v. Baca,* 1976-NMSC-015, 89 N.M. 204, 549 P.2d 282. There, the Defendant argued that the prosecutor asked the investigating officer if he "at any time [interviewed] the defendant." *Id.* ¶ 2. The officer responded, in part, "I then explained a waiver of rights to him and he told me

19

at the time he did not wish to talk to me, he wanted an attorney before he said anything." *Id.* We characterized that testimony as "unsolicited, and possibly inadvertent," holding that "[we] would draw the line between those comments which can be directly attributed to the prosecutor and those comments incorporated within the testimony of a witness." *Id.* ¶¶ 3, 5. *See also State v. Wildgrube*, 2003-NMCA-108, ¶¶ 23-24, 134 N.M. 262, 75 P.3d 862 (holding that prosecutor's reference to a police officer's unsolicited comment regarding defendant's post-Miranda silence was not misconduct requiring a reversal).

{38} Here, the officer's comments were incorporated within his testimony establishing his connection to the case and his reliability as a witness. The deputy did not mention that his attempt to interview Defendant had failed because Defendant invoked his right to remain silent, but simply described how he completed his follow-up investigation. The record does not demonstrate an intent by the deputy to comment specifically on Defendant's silence, nor that this comment was directly attributable to the prosecutor's question. Due to the additional evidence which inculpated Defendant, such as eyewitness testimony of the event, we cannot say that there is a reasonable probability that the deputy's testimony was a significant factor in the jury's mind when they convicted Defendant. Accordingly, the district court did not abuse

20

its discretion in denying a mistrial.

**D.     Defendant was not prejudiced by the jury seeing his leg restraints**

{39}     Defendant's fourth issue is that he was prejudiced when the jury saw his leg restraints when he stumbled as he stood up at one point during the first day of trial. However, he concedes that he did not ask the court to make a finding of prejudice or declare a mistrial and asks this Court to review the possibility that the jury saw his leg restraints for fundamental error.  The State argues that the factual record does not support Defendant's contention that the jury saw him shackled because all the parties agreed that the table skirt blocked the jury's view.

{40}     "To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked." Rule 12-216(A) NMRA.  When the claim is not properly preserved, we consider the claim under the fundamental error exception to the preservation rule.  *See State v. Holly*, 2009-NMSC-004, ¶¶ 40-42, 145 N.M. 513, 201 P.3d 844 (reviewing defendant's claim that a juror may have seen defendant handcuffed for fundamental error because the defendant did not request a mistrial, did not ask the trial court to strike the juror, or seek a finding of prejudice), *State v. Silva*, 2008-NMSC-051, ¶ 11, 144 N.M. 815, 192 P.3d 1192 (citing Rule 12-216(B)(2) NMRA).

**{41}** In reviewing the fundamental error exception to the preservation rule, we must first determine whether an error occurred and if so, whether the error was fundamental. *See id.* Fundamental error "must be such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive." *State v. Johnson*, 2010-NMSC-016, ¶ 25, 148 N.M. 50, 229 P.3d 523 (citation omitted). "Fundamental error only applies in exceptional circumstances when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." *Id.*

**{42}** In *Holly,* we held that no fundamental error occurred where it was unclear whether the juror had actually seen the defendant in handcuffs, and if they had, whether it was more than "inadvertent or insignificant exposure." 2009-NMSC-004, ¶ 42. Similarly, in *Johnson*, because there was no indication that the jury was aware the defendant was wearing leg irons during a trial, the presumption of innocence was not violated, the dignity of the judicial process was not affected, and the district court did not commit fundamental error. 2010-NMSC-016, ¶¶ 25, 29.

**{43}** Here, defense counsel concedes that a black skirt on the table shielded the jury's view of Defendant's shackles and that he did not ask the court to make a finding of

22

prejudice or declare a mistrial. Because it is unclear whether the jury saw the leg restraints and if they did, there is no evidence that it was anything other than inadvertent or insignificant exposure, this case is not the exceptional type that goes to the violation of the foundation of presumption of innocence. Further, this case does not shock the conscience as Defendant's guilt is supported by substantial evidence in the record, including eyewitness testimony and evidence of Defendant's motive and a pattern of conduct toward Robledo. *See State v. Trujillo*, 2002-NMSC-005, ¶ 60, 131 N.M. 709, 42 P.3d 814 (holding that because the Court found "substantial evidence in the record to support Defendant's convictions, and because Defendant failed to demonstrate circumstances that 'shock the conscience' or show a fundamental unfairness," no fundamental error existed). Accordingly, there was no fundamental error by the district court.

**E.      The court did not abuse its discretion in admitting prior bad acts**

{44}      Defendant's fifth issue is that the district court erred in admitting evidence of prior acts, in violation of Rule 11-402 NMRA. Defendant argues that cumulatively, the introduction of this evidence created the impression that Defendant was troublesome and a lawbreaker. The State argues that the district court did not err in allowing the State to present evidence of Defendant's animus toward the victim or in

23

cross-examining Defendant about previous acts of violence. Therefore, the State argues that the evidence was properly admitted to show motive and pattern of conduct.

{45}     When a district court's evidentiary ruling is properly preserved for review, we examine the ruling under an abuse of discretion standard. *See State v. Flores*, 2010-NMSC-002, ¶ 25, 147 N.M. 542, 226 P.3d 641. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks omitted). We will not say that the district court "abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

**1.      Evidence of the trespass order, broken windshield, and broken window**

{46}     First, Defendant argues that the court improperly admitted testimony about a "no trespass" order Robledo had issued to Defendant, in violation of Rule 11-404. The State responds that evidence regarding the "no trespass" order was relevant and admissible because it demonstrated a pattern of conduct toward Robledo from which the jury could infer that Defendant acted with deliberate intention to kill Robledo. In addition, the State argues that Defendant did not object to testimony about the order at trial, only to the admission of the actual trespass order.

24

{47}    At trial, the prosecution sought to elicit testimony that three months prior to the murder, Robledo had obtained a criminal trespass notice barring Defendant from returning to the home. The district court had previously ruled, prior to trial, that evidence of the no-trespass order issued against Defendant by Robledo was admissible as it was relevant to proving deliberate intent. During trial, defense counsel objected to the admission of the trespass order. The court, finding that testimony about the order was admissible as to motive, overruled the objection.

{48}    Second, Defendant argues that the court improperly admitted testimony about a prior incident involving a broken windshield. The State argues that evidence regarding the broken window was relevant and admissible because it demonstrated a pattern of conduct toward Robledo from which the jury could infer that Defendant acted with deliberate intention to kill Robledo.

{49}    At trial, the prosecution sought to admit evidence that approximately one month before the killing, Defendant broke the windshield of Robledo's car because he "got mad." The defense objected to the testimony at trial regarding the broken windshield, claiming it was "uncharged conduct." The district court allowed the testimony finding that it demonstrated Defendant's pattern of conduct toward Robledo.

**{50}** Third, the court admitted testimony about a police investigation of a broken window at Robledo's house, although the court did not allow the witness to testify as to who had broken the window. The State argues that Defendant failed to preserve any argument regarding the broken window because he did not move to have the testimony stricken after the district court sustained the objection.

**{51}** At trial, the prosecution sought to introduce testimony that a month before the killing, Defendant's mother had filed a police report after Defendant had broken the front window of Robledo's home when no one would answer the door. The prosecutor asked the responding officer if he knew who had broken the window. Defense counsel objected, arguing that the responding officer's testimony as to who broke the window was inadmissible hearsay testimony and violated Defendant's confrontation rights. The court sustained the objection. Despite the limitation on the prosecution, the Defendant subsequently testified on cross-examination that after no one answered the door, he had broken the window by knocking on it as it was "flimsy." On appeal, Defendant argues that all of the testimony about the broken window, including the filing of the police report, was improper.

**{52}** "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance

26

with the character." Rule 11-404(B)(1) NMRA. However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule 11-404(B)(2).

**{53}** The procedure for admitting evidence under Rule 11-404(B) requires first, identification of the "consequential fact to which the proffered evidence of other acts is directed." *State v. Serna*, 2013-NMSC-033, ¶ 17, 305 P.3d 936 (internal quotation marks and citation omitted). Second, the rule requires a demonstration of the other acts' "relevancy to the consequential facts, and the material issue, such as intent, must in fact be in dispute." *Id.* (internal quotation marks and citation omitted). Third, if the evidence offered is of a crime other than the one charged, the other crime must "have a real probative value, and not just possible worth on issues of intent, motive, absence of mistake or accident, or to establish a scheme or plan." *Id.* (citation omitted). "[T]he rationale for admitting the evidence [must be] to prove something other than propensity." *Id.; see also State v. Martinez*, 1999-NMSC-018, ¶ 27, 127 N.M. 207, 979 P.2d 718 ("The list of permissible uses of evidence of other wrongs in Rule 11-404(B) is intended to be illustrative rather than exhaustive, and evidence of other

27

wrongs may be admissible on alternative relevant bases so long as it is not admitted to prove conformity with character." (citation omitted)).

{54} Here, the evidence of the "no trespass" order, testimony about the broken windshield, and the broken window was consequential to the determination of whether Defendant had the intent to kill Robledo, an essential element of first-degree murder. The State was not attempting to prove that Defendant acted in accordance with his character, but rather that Defendant had motive and the intent to murder Robledo because of their strained relationship. Such a purpose is permitted under Rule 11-402 NMRA. *See, e.g., State v. Rojo,* 1999-NMSC-001, ¶ 47, 126 N.M. 438, 971 P.2d 829 (holding that evidence of the defendant's and victim's deteriorating relationship and the specific actions surrounding her reason for rejecting the defendant "directly addresse[d] the motivational theories presented at trial . . . [and t]hus, the trial court did not abuse its discretion by admitting this evidence . . . ."); *see also State v. Allen*, 2000-NMSC-002, ¶ 41, 128 N.M. 482, 994 P.2d 728 (holding that "evidence of Defendant's prior crime in 1982 was relevant to prove his motive for the murder in the context of the aggravating circumstance of murdering a witness." (citations omitted)). Accordingly, we hold that the district court did not abuse its discretion in admitting the evidence of Defendant's prior acts.

## 2.    Evidence of the head-butt on an officer

{55}    Defendant argues that the district court erred in allowing the prosecution's inquiry during cross-examination about whether Defendant had head-butted a police officer, arguing such evidence was "not connected by the prosecution in any manner to killing of Mr. Robledo." The State argues that Defendant testifying that Robledo was the first aggressor opened the door to being cross-examined on specific instances of conduct where Defendant was aggressive and violent, including the head-butt on an officer.

{56}    At trial, Defendant testified that on the day he shot Robledo, he went to his mother's house, saw Robledo, and they began arguing. Defendant claimed Robledo struck him and hit him. Defendant also testified that Robledo "picked on" him, that the Defendant had heard from his mother that Robledo had killed someone, and that Robledo was not nice and not caring. Defendant stated that he did not plan to kill Robledo, but that he was defending himself and knew that Robledo had a gun. Defendant thought he was in danger when Robledo allegedly threatened to get his pistol.

{57}    On cross-examination, the prosecution asked the district court to allow evidence of specific instances where the Defendant was aggressive, under Rule 11-

404(A)(2)(b)(ii) and Rule 11-405, because Defendant put forth evidence that Robledo, the victim, was the first aggressor and had a violent character. Defense counsel objected to the question, arguing that it did not satisfy any of the purposes of Rule 11-404. The court overruled the objection. The district court granted the prosecution's request to admit evidence of specific instances of conduct and allowed the prosecution to ask the question. The prosecutor asked Defendant, "[i]sn't it true that you have also head-butted a police officer?" Defense counsel, in order to preserve the issue for appeal, renewed his objection.

{58}     The Rules of Evidence contain an exception in criminal cases to the general rule prohibiting character evidence: if a defendant offers evidence of a victim's pertinent trait, the State can offer rebuttal "evidence of the defendant's same character trait." Rule 11-404(A)(2)(b)(ii). "When evidence of a person's character is admissible, it may be offered in the form of reputation or opinion evidence. *See* Rule 11-405(A). "On cross-examination of the character witness . . . inquiry into relevant specific instances of the person's conduct" are allowed. Rule 11-405(A). Or "when a person's character or character trait is an essential element of a charge, claim, or defense, the character or trait may also be proved by relevant specific instances of conduct." Rule 11-405(B).

{59} While it is correct that the defendant who offers evidence of a victim's pertinent character trait (e.g., violence) opens the door to allow the prosecution to offer evidence of the defendant's same character trait, under Rules 11-404(A)(2)(b) and 11-404(A)(2)(b)(ii) NMRA, the evidence that is admitted may only be reputation or character evidence, unless the character trait is an essential element of the crime charged. Here, Defendant offered evidence at trial that he shot Robledo in self-defense because Robledo was the first aggressor. He supported this assertion by offering evidence of Robledo's character: that Robledo was a violent and aggressive man who had killed a person. This was evidence of the victim's "pertinent trait": a reputation for violence and aggression. By offering the evidence of Defendant's head-butt on an officer during cross-examination of Defendant, the State was offering evidence that Defendant had the same traits for aggression and violence through an inquiry into specific instances of Defendant's conduct. The evidence of head-butting an officer is not reputation or opinion testimony. Nor is it proving an essential element of the crime charged because violence is not a specific element of murder or self-defense. *State v. Baca*, 1993-NMCA-051, ¶ 16, 115 N.M. 536, 540, 854 P.2d 363, 367 ("The victim's violent disposition is not an 'element' of the defense in the strictest sense; rather, it is used circumstantially -- that is, to help prove that the victim

31

acted in the particular manner at the time of the incident in question.") It seems that the information of Defendant head-butting an officer is being used only to show Defendant's propensity for violence. And contrary to the State's argument, under Rule 11-405(A) on cross-examination it is the specific instances of Robledo's conduct that is allowed to rebut the testimony from Defendant of Robledo's "pertinent trait." See Rule 11-405.

{60} Accordingly, it was error for the district court to admit the evidence of Defendant's prior act of head-butting a police officer. Non-constitutional error is harmless when there is no reasonable probability the error affected the verdict. *State v. Tollardo*, 2012-NMSC-008, ¶ 36, 275 P.3d 110. In the context of all the evidence in the record as referenced in paragraphs 3 and 4, *supra*, this isolated error was harmless and had no effect on the conviction.

**F.     The district court did not abuse its discretion by not declaring a mistrial based on questions about Defendant's legal research**

{61} Defendant's sixth issue is that the district court abused its discretion when it denied Defendant's motion for a mistrial after the prosecutor cross-examined Defendant about the amount of legal research he conducted. Defendant argues that the prosecution's conduct shows a calculated and pervasive strategy of penalizing the Defendant for the exercise of his constitutional rights by characterizing Defendant's

32

actions as manipulative abuses of "the system." The State argues that because Defendant initially indicated that he was seeking to argue a defense of self-defense, the prosecutor did not cross the line by asking about the amount of legal research Defendant had conducted.

{62} During the cross-examination of Defendant, the prosecutor asked, "And you've done a significant amount of legal research on how to get the jury to buy this?" The defense objected and moved for a mistrial. The court directed the prosecution to lay a foundation. The prosecutor asked Defendant, "Do you recall giving a lot of requests to go to the law library to research how to beat your charges?" Defense counsel objected a second time, arguing that the question rose to prosecutorial misconduct, and again asked for a mistrial. The judge ruled that he would not allow the questions about Defendant's research and would not declare a mistrial.

{63} We examine a district court's denial of a motion for mistrial based on an allegation of prosecutorial misconduct under an abuse of discretion standard. *See Allen,* 2000-NMSC-002, ¶ 95 ("the trial court is in the best position to evaluate the significance of any alleged prosecutorial errors" (citation omitted)); *see also State v. Ramos-Arenas*, 2012-NMCA-117, ¶ 1, 290 P.3d 733. "An isolated, minor impropriety ordinarily is not sufficient to warrant reversal . . . because a fair trial is not necessarily

33

a perfect one." *Allen,* 2000-NMSC-002, ¶ 95 (internal quotation marks and citations omitted).

{64} Reviewing all of the comments made, in the context in which they were made, and taking into account those comments' potential effect on the jury, the questions were isolated and minor. Accordingly, the prosecutor's remarks did not deprive Defendant of a fair trial.

## IV.  CONCLUSION

{65} We hold that the district court did not commit reversible error as to all of Defendant's claims. Accordingly, we affirm Defendant's convictions.

{66}  **IT IS SO ORDERED.**

_____
**PETRA JIMENEZ MAES, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

34

_____
**BARBARA J. VIGIL, Justice**


_____
**JUDITH K. NAKAMURA, Justice**