2005-NMCA-135

124 P.3d 1175

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Ruben FLORES, Defendant–Appellant.**

**No. 23,507.**

Court of Appeals of New Mexico.

Aug. 10, 2005.

Certiorari Denied, No. 29,425,
Nov. 28, 2005.

Patricia A. Madrid, Attorney General, Santa Fe, NM, M. Victoria Wilson, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Trace L. Rabern, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

SUTIN, Judge.

{1} Defendant Ruben Flores appeals from his conviction of battery upon a peace officer. Defendant contends that the district court erred in refusing to determine his present competency to stand trial, not allowing Defendant to present the issue of competency to the jury, and improperly instructing the jury. We affirm.

## BACKGROUND

{2} In January 1999, Defendant was charged with murder. The State filed a notice to seek the death penalty if Defendant was convicted of capital murder. In May 1999, defense counsel had Defendant evaluated by a doctor who concluded that Defendant was mentally retarded and incompetent to stand trial. The district court stayed the proceedings pending a determination of Defendant's competency. An independent evaluation requested by the State concluded Defendant marginally met the test for competency but recommended that Defendant be assessed further. The State stipulated that Defendant was not at that time competent to stand trial and that he should be committed for treatment to attain competency. In November 1999, the district court entered an order committing Defendant for treatment pursuant to NMSA 1978, § 31–9–1.2(B) (1999). Section 31–9–1.2(B) provides that a defendant who is determined to be incompetent and found to be dangerous may be committed by the district court to an institution for treatment to attain competency.

{3} Pursuant to the commitment order, Defendant was transferred on December 20, 1999, from the Lea County Detention Center (LCDC) to the Las Vegas Medical Center (LVMC), for treatment to attain competency and treatment for dangerousness. Doctors

who evaluated, tested, interviewed, interacted with, and observed Defendant over the approximate three months of Defendant's commitment at the LVMC determined that Defendant was competent to stand trial and was not mentally retarded. On March 31, 2000, Defendant was transferred back to the LCDC. The competency hearing was originally set for September 18, 2000, but was continued several times before the hearing finally began in May 2001.

{4} Well before the second competency hearing began in May 2001, while in the LCDC awaiting trial in the capital murder case, Defendant was involved in an incident in jail which resulted in a charge against him for the crime of aggravated battery upon a peace officer contrary to NMSA 1978, § 30–22–25 (1971). This charge was filed following a December 1, 2000, incident during an LCDC "shakedown" and a search in Defendant's LCDC cell. During the search of Defendant and his cell, a scuffle between Defendant and some officers occurred, during which Defendant struck an officer in the head with a cup, causing a laceration on the officer's ear. In December 2000, the magistrate court at Defendant's request transferred his aggravated battery case to district court for the purpose of determining his competency. The aggravated battery case was soon joined with the murder case for the sole purpose of making a competency determination.

{5} In April 2001, LVMC informed the court by letter that Defendant was competent to stand trial. Defendant was evaluated by doctors selected by the defense and these doctors concluded that Defendant was not competent to stand trial and was mentally retarded. The district court held the competency hearing in May, June, and October 2001. Two doctors from LVMC testified on behalf of the State that Defendant was competent to stand trial and not mentally retarded. However, the three defense doctors testified that Defendant was not competent to stand trial and was mentally retarded.

{6} On December 17, 2001, the court, Judge R.W. Gallini presiding (in the murder case and the joint competency hearing), determined that Defendant was competent to stand trial and was not mentally retarded. On December 21, 2001, the court entered an order setting Defendant's case for trial based on the court's findings that Defendant was competent to stand trial and did not have mental retardation. The court found that the LVMC doctors determined that Defendant understood the nature and gravity of the proceedings against him, that Defendant had a factual understanding of the criminal charges, and that Defendant was capable of assisting in his own defense. The court also found the LVMC doctors to be more credible than Defendant's experts. It concluded that the State met its burden of proof in proving competency. It further concluded that Defendant failed to prove by a preponderance of the evidence that he was mentally retarded. Defendant's aggravated battery case moved forward. (While it is not relevant to this appeal, Defendant's murder charge was subsequently resolved by a plea of guilty.) Judge Gary Clingman was assigned to the aggravated battery case on February 12, 2002. Trial was held on August 8, 2002.

{7} Just before trial, Defendant's third counsel, who entered her appearance on February 12, 2002, asked the court to "find [Defendant] today not competent to proceed to trial," and "to make a determination with regard to [Defendant's competency] this morning." Pointing out the long stretch between Defendant's last evaluations and even the hearing on competency before Judge Gallini, and the present proceeding, counsel told the court that she thought Defendant's deterioration stemmed from his isolated confinement in prison following the last competency hearing. Defendant asked the court to take judicial notice of the second competency proceeding before Judge Gallini in May, June, and October 2001 because evidence in that proceeding pertained to Defendant's request before the court. Specifically, Defendant's counsel asked the court "to make its own finding with regard [to competency], keeping in mind, I've asked the Court to take judicial notice of the entire proceedings with regard to competency."

{8} In further support of her request that the court make a competency determination, Defendant's counsel stated that she had four-

teen years of experience "doing this kind of work," and that she had had contacts with Defendant as a go between for Defendant and his death penalty team before she represented Defendant on the battery charges. Based on her experience and time with Defendant, she stated her opinion to be that Defendant was not competent to stand trial and was mentally retarded. More specifically, defense counsel stated that since the second competency hearing Defendant had been "held primarily in isolation" at the LCDC and that "he deteriorates while he sits, and is held in isolation." Based on her view that Defendant's history showed him as functionally illiterate, counsel told the court that Defendant "doesn't even have the solace of being able to read, to occupy his mind while he's locked up, and I would have to say to the Court that at this time, it's my belief and my request that the Court find him today not competent to proceed to trial."

{9} At one point, unsure that there was a sufficient record under Rule 5–602 NMRA, counsel asked the court to consider "other issues" in making a determination on competency. Counsel handed the court a sealed envelope, as an offer of proof, for the court's eyes only, containing "confidences" revealed to her by Defendant. Although concerned about a violation of ethical rules by offering the confidences because, in her opinion, Defendant was not competent to waive his attorney/client privilege at the time, counsel explained that the confidences would "make a record for a self-defense instruction." Yet counsel could not permit Defendant to testify because the death penalty team had advised her not to allow Defendant to testify, for fear of incriminating himself relating to the murder trial. Counsel, then, felt she could not render effective assistance of counsel, in that Defendant needed to testify in order to establish self-defense as shown in the confidential information in the sealed envelope.

{10} At a later hearing the same day, counsel informed the court that she had met with Defendant between hearings and had discussed an earlier court order regarding cross-examination limitations if Defendant were to testify. She also stated that she had discussed with Defendant giving testimony in

his own behalf and whether to waive his right against self-incrimination. Counsel further told the court that it was clear to her that Defendant did not believe he was able to understand or comply with the court's order. Counsel was "left with the abiding conclusion that [Defendant] is not competent today to make such a decision either to waive or to assert [his privilege against self-incrimination]." Counsel then, again, stated that, in attempting to explain to Defendant the benefits and detriments of waiver, Defendant "was not able to understand the parameters of the order." After a recess, counsel told the court that she did not think Defendant was capable of understanding the implications of presenting to the jury an instruction on the lesser included offense of battery on a peace officer.

{11} The court's ruling actually came early in these discussions. It was the court's only ruling and rationale underlying its ruling on the competency issue. The court stated the following:

I've known Judge Galini [sic] a long time, as I've known both counsel, and both counselors [are] very good advocates to their position. However, Judge Galini [sic] did hold a very long hearing in this regard, and did find the evidence presented in this matter, and did make these findings and conclusions and his conclusion is that [Defendant] is competent, and we'll go ahead and proceed in that the objective [sic] is noted.

Defendant was convicted of battery on a peace officer.

{12} Defendant's points on appeal are that the district court erred by: (1) refusing to make a contemporaneous determination of Defendant's present ability to intelligently assist his attorney, (2) blindly relying on the prior competency ruling without independently analyzing the past and present evidence of Defendant's competency, (3) not allowing Defendant to present the issue of his present competency to the jury, and (4) giving a confusing excessive force instruction to the jury.

{13} The State asserts we should affirm the district court because: (1) Defendant failed to raise competency from the date of

Judge Gallini's determination of competency until the morning of Defendant's trial date, (2) Defendant's sole request to the court was to determine that Defendant was not competent to proceed to trial that day, (3) defense counsel failed to ask the court to conduct another competency hearing, (4) defense counsel failed to present any evidence to substantiate her belief that Defendant was not competent and failed to explain why she believed Defendant's competence had deteriorated, and (5) defense counsel requested that the court simply reweigh the evidence heard by Judge Gallini and reach a different conclusion.

## DISCUSSION

### I. The Issue of the Court's Refusal to Again Look into Competency

{14} The critical issue before us is whether the district court erred in subjecting Defendant to trial instead of having Defendant evaluated a third time for competency.

### A. Competency Law and Procedure

■ {15} "It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). "[T]he failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." *Id.* at 172, 95 S.Ct. 896.

■ {16} "[I]t is a violation of due process to prosecute a defendant who is incompetent to stand trial." *State v. Rotherham*, 122 N.M. 246, 252, 923 P.2d 1131, 1137 (1996). "A person is competent to stand trial when he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and ... he has a rational as well as factual understanding of the proceedings against him." *Id.* (internal quotation marks and citation omitted); *State v. Najar*, 104 N.M. 540, 542, 724 P.2d 249, 251 (Ct.App.1986) ("The competency issue is whether a defendant understands the nature

and significance of the proceedings, has a factual understanding of the charges, and is able to assist his attorney in his defense."). "An accused must have the capacity to assist in his own defense and to comprehend the reasons for punishment." *Rotherham*, 122 N.M. at 252, 923 P.2d at 1137.

A man should not arbitrarily or capriciously be denied upon his day in court a trial in which he may competently bring to his defense any fact of which he may be apprised; and if he suffers from mental disorder at that time so as not to understand the nature of the proceedings against him, or lacks the ability to communicate to his counsel any elements in his defense, he is denied that right.

*State v. Folk*, 56 N.M. 583, 592, 247 P.2d 165, 171 (1952). In this opinion, we refer to the *Rotherham* due process requirement as "the ability to consult and understand."

■ {17} Our Legislature built the due process alert into New Mexico law. It did not mince words in broadly stating that "[w]henever it appears that there is a question as to the defendant's competency to proceed in a criminal case, any further proceeding in the cause shall be suspended until the issue is determined." NMSA 1978, § 31–9–1 (1993). The issue of competency to stand trial may be raised by motion at any stage of the proceedings. Rule 5–602(B)(1). Once an issue of competency to stand trial is raised, the issue must "be determined by the judge, unless the judge finds there is evidence which raises a reasonable doubt as to the defendant's competency to stand trial." Rule 5–602(B)(2). Thus, whether a "question as to the defendant's competency to proceed" exists is judged by whether there is evidence that raises a reasonable doubt as to the defendant's competency to stand trial. § 31–9–1; Rule 5–602(B)(2). "If a reasonable doubt as to the defendant's competency to stand trial is raised prior to trial, the court shall order the defendant to be evaluated as provided by law." Rule 5–602(B)(2)(a). Our law requires that when a question as to a defendant's competency is raised, the defendant's competency must be professionally evaluated by a qualified professional who must submit a report to the court. *Rother-*

*ham,* 122 N.M. at 253, 923 P.2d at 1138; *see* NMSA 1978, § 31–9–1.1 (1993). As well, a mental examination will be required before any determination of competency "[u]pon motion and upon good cause shown." Rule 5–602(C); *see also* NMSA 1978, § 31–9–2 (1967) (stating "[u]pon motion of any defendant, the court shall order a mental examination of the defendant before making any determination of competency under Section[ ] ... 31–9–1"); *State v. Herrera,* 2001–NMCA–073, ¶ 34, 131 N.M. 22, 33 P.3d 22 (holding that no error occurred in refusing to order a competency evaluation after the defendant entered an *Alford* plea, where the assertion of incompetency did not give rise to a reasonable doubt as to competency); *State v. Hovey,* 80 N.M. 373, 376, 456 P.2d 206, 209 (Ct.App.1969) (deciding under NMSA 1953, § 41–13–3.1 (1967), the predecessor to Section 31–9–1, and under Section 41–13–3.2, the predecessor to Section 31–9–2, that no error occurred in denying a motion for a psychiatric examination where the "impression of counsel" as to the defendant's incompetency did not constitute reasonable cause for belief that the defendant was not competent).[1]

{18} NMSA 1978, §§ 31–9–1 to –2 (1967, as amended through 1999), procedurally govern the process of determining competency to proceed in a criminal case. Sections 31–9–1.1 through 31–9–1.6 set out procedures as to determinations of competency and mental retardation.

■■■ {19} We read the applicable statutes and rules, considered together, to intend that whenever a legitimate concern about the present ability of a defendant to consult and understand is brought to the court's attention, the court is required to consider whatever competency-related evidence is before the court and to determine whether there exists a reasonable doubt as to the defendant's competency to stand trial. In considering the evidence and whether reasonable doubt exists, the court must, of course, keep in mind the requirement that a defendant must have sufficient present ability to consult and understand as required under due process of law. If the court determines that there is reasonable doubt as to the defendant's competency, the court must have the defendant's competency professionally evaluated. If the court does not determine that there is such reasonable doubt, then the court is to determine the defendant is competent.

## B. Standard of Review

■■■ {20} We review the denial of a motion for a competency evaluation for an abuse of discretion. *Herrera,* 2001–NMCA–073, ¶ 31, 131 N.M. 22, 33 P.3d 22; *Najar,* 104 N.M. at 542, 724 P.2d at 251; *see also United States v. Ramirez,* 304 F.3d 1033, 1035 (10th Cir.2002) ("Whether to order a competency examination is reviewed for an abuse of discretion."); *United States v. Prince,* 938 F.2d 1092, 1095 (10th Cir.1991) (holding that a trial court's refusal to order a second competency exam is reviewed for abuse of discretion). No competency hearing is required when there is minimal or no evidence of incompetency. *United States v. Crews,* 781 F.2d 826, 833 (10th Cir.1986).

{21} Defendant asserts that the issue of whether the district court erred in refusing further competency proceedings is reviewed de novo because it implicates his constitutional right to due process. In support of this footnoted assertion, Defendant cites *State v. Attaway,* 117 N.M. 141, 145–46, 870 P.2d 103, 107–08 (1994) (analyzing the standard of review of mixed questions of fact and law, and stating that "factors favoring de novo review are most predominate when the mixed question implicates constitutional rights"). We are not persuaded that this case requires de novo review. We see no basis on which to apply Defendant's proposed standard and we adhere to the standard clearly stated in *Herrera* and *Najar.*

1. Section 31–9–1 is the successor to NMSA 1953, § 41–13–3.1 (1967), and Section 31–9–2 is the successor to NMSA 1953, § 41–13–3.2 (1967). *See* 1967 N.M. Laws ch. 231, §§ 2, 3; 1972 N.M. Laws ch. 71, § 18; 1988 N.M. Laws ch. 107, § 1; § 31–9–2 (history). Section 31–9–1 amended Section 41–13–3.1 and it has been amended several times. Section 31–9–2 did not change Section 41–13–3.2 and it has not been amended. No cases analyze whether Section 31–9–2 still has a purpose or vitality separate from Sections 31–9–1 through 31–9–1.6.

### C. The Evidence Before the Court

{22} As indicated earlier in this opinion, the district court had the duty to consider evidence presented by Defendant and to determine, based on that evidence, whether there was a question as to Defendant's competency to proceed; that is, whether reasonable doubt existed as to Defendant's present ability to consult and understand. Defendant's counsel requested the court to consider three matters: (1) the evidence at the previous competency hearing, (2) her opinions based on Defendant's solitary confinement and on her observations and experience, and (3) the time lapses from the evaluations of Defendant and from the second competency hearing. We turn to the three matters raised by Defendant's counsel.

### 1. The Second Competency Hearing

{23} Over the course of approximately three months in late 1999 and early 2000, after the State stipulated that Defendant was not competent to stand trial, and as a part of their evaluation of Defendant, the LVMC doctors administered tests designed to measure competency to determine Defendant's competence to stand trial. They evaluated his adaptive functioning, his academic and family history, and his intellectual functioning. Although they diagnosed Defendant with anti-social personality disorder and borderline intellectual functions, the doctors reported that Defendant was competent and not mentally retarded.

{24} Defendant's experts, for the most part, contradicted the State's experts. Defendant's experts also administered tests to Defendant to assess his competency and possible mental retardation. Among other things, they found him to be within the range of mental retardation, significantly intellectually impaired, and suffering from possible brain insults or injuries. Their opinion was that Defendant was mentally retarded and incompetent to stand trial. As stated earlier in this opinion, Judge Gallini found the LVMC experts to be more credible than Defendant's experts. Defendant further asserts that the court ignored Defendant's experts' testimony and "all the

more-qualified and more-comprehensive testing" that showed Defendant was incompetent and mentally retarded. Defendant attacks the LVMC experts, asserting, among other views, that the experts did not consider Defendant's family and school history as indicative of mental retardation, their interpretation of IQ and verbal test scores was incorrect, they failed to assess Defendant's adaptive functioning, and they failed to specifically testify that Defendant had a "rational" understanding of the charges against him. Defendant states on appeal that he wanted the court to take judicial notice of the evidence before Judge Gallini so that it could "understand the context in which [counsel] was raising competency again." Defendant also faults the court for ignoring his evidence and blindly relying on Judge Gallini's prior ruling, because, in Defendant's view, Judge Gallini's ruling was not made under the correct legal standards for competency and for mental retardation.

{25} To the extent Defendant may have been requesting the district court in the present case relating to Defendant's battery charge to reweigh the evidence in the prior competency hearing and then and there independently decide competency based on that evidence, or to look into error on the part of Judge Gallini, the court had no such duty. The record can be read, however, as Defendant having requested the court to review that evidence as background that the court should consider in determining whether there was a reasonable doubt as to Defendant's present competency and whether to proceed with trial or to suspend the proceedings.

### 2. Counsel's Observations and Opinions

{26} Testimony of experts is not required to support a contention of incompetency. *Najar,* 104 N.M. at 543, 724 P.2d at 252. Non-experts who have observed a defendant and who have knowledge of that defendant's mental state and are thereby able to form an opinion as to competency can form the basis for a further determination by the court as to the need for an evaluation. *Id.*

644

{27} It nevertheless appears that, in New Mexico law, something more than counsel's unsubstantiated assertions and opinion regarding a defendant's competency is required to pass the reasonable doubt and good cause tests. *See Herrera*, 2001–NMCA–073, ¶¶ 32–34, 131 N.M. 22, 33 P.3d 22. In *Herrera*, we held that the district court did not abuse its discretion in denying the defendant a mental examination. *Id.* ¶ 34. We ruled that the defense counsel's assertions of facts used to show the defendant's mental status were insufficient to raise the issue of competency and did not show good cause to order an evaluation. *Id.* In that case, no affidavits or other documentary evidence were submitted and counsel did not assert the defendant's inability to consult and understand. *Id.* We reasoned that "[a] question regarding a defendant's competency ... is not raised by an assertion of that issue, even though the assertion is in good faith." *Id.* ¶ 33 (internal quotation marks and citation omitted). Likewise, in *State v. Smith*, 80 N.M. 742, 743–44, 461 P.2d 157, 158–59 (Ct.App.1969), we held that the issue of competency was not raised based on the defendant's counsel's statement that the defendant had, "on an occasion been committed to a state mental hospital" and the defendant's statements that he had been committed for psychiatric examination and hospitalization a year earlier to determine whether he was a kleptomaniac. (Internal quotation marks omitted.)

{28} Similarly, in *Najar* we stated that assertions by defense counsel must be substantiated. 104 N.M. at 543, 724 P.2d at 252; *see also State v. Chacon*, 100 N.M. 704, 706, 675 P.2d 1003, 1005 (Ct.App.1983) (stating that defense counsel's conclusions, without more, did not demonstrate good cause to require an examination); *Hovey*, 80 N.M. at 376, 456 P.2d at 209 (stating that defense counsel's impression as to the defendant's mental capacity was insufficient to constitute reasonable cause for a belief that the defendant was incompetent to stand trial); *State v. Tartaglia*, 80 N.M. 788, 790, 461 P.2d 921, 923 (Ct.App.1969) (holding that "when there has been a prior judicial determination of a defendant's incapacity to be tried, a redetermination of mental capacity must be based on more than the prosecutor's interpretation

of a report neither in evidence nor in the record").

{29} We read the foregoing New Mexico cases to say that a court may consider defense counsel's observations and opinions, but that those observations and opinions alone cannot trigger reasonable doubt about the defendant's competency. "Although we do not, of course, suggest that courts must accept without question a lawyer's representations concerning the competence of his client, an expressed doubt in that regard by one with the closest contact with the defendant is unquestionably a factor which should be considered." *Drope*, 420 U.S. at 178 n. 13, 95 S.Ct. 896 (internal quotations marks and citations omitted); *see also United States v. Johns*, 728 F.2d 953, 957 (7th Cir.1984) ("While we have stated before that an attorney's representations about his client's competency are entitled to consideration, we believe that where no explanation for the attorney's competency assessment is elicited or offered, and the attorney's familiarity with his client has been drawn into question by his obvious surprise at his client's actions, his assessment is not dispositive." (citation omitted)); *Connecticut v. DesLaurier*, 230 Conn. 572, 646 A.2d 108, 116 (1994) (acknowledging that "the opinion of the defendant's counsel is unquestionably a factor which should be considered," but that the "court need not accept it without question" (internal quotation marks and citation omitted)).

{30} Of course, trial courts at times may be legitimately leery of requests for competency evaluations, since some requests are undoubtedly made primarily or solely for the purpose of delay. We note such concern as expressed in *Drope*: "The sentencing judge observed that motions for psychiatric examinations have often been made merely for the purpose of delay, and estimated that almost seventy-five percent of those sent for psychiatric examinations are returned mentally competent." 420 U.S. at 178 n. 13, 95 S.Ct. 896 (internal quotation marks and citation omitted). It is likely this concern that gave rise to New Mexico case law's requirement that a defendant offer something more than

defense counsel's bare representations about the defendant's competency.

{31} We do not read the case law as requiring expert testimony in order to obtain an evaluation of his or her competency pursuant to Rule 5–602(C). *See Najar*, 104 N.M. at 543, 724 P.2d at 252 ("Defendant was not required to offer the testimony of experts to support his incompetency contentions."). Instead, a defendant could offer an affidavit from someone who has observed the defendant and formulated an opinion about his or her competency, such as a corrections officer or defense counsel's paralegal. *See id.* ("If nonexperts had the opportunity to observe [the defendant] and had knowledge of his mental state, and were thus able to form an opinion as to his competency, their opinions could have been offered and received, and could have formed the basis for a further determination by the court.").

### 3. Time Lapses

{32} The length of time from the evaluations of Defendant and also from Defendant's second competency hearing, and Defendant's possible deterioration over time, present a somewhat troubling history. Although Judge Gallini's determination nine months earlier must go unchallenged, his ultimate determination turned on which set of experts was more credible than the other. Defendant's experts were well qualified. Defendant had initially been determined not to be competent. He was treated to competency in only three months. At least two years then passed after the LVMC evaluations regarding Defendant's competency, during which Defendant was in prison with murder and then aggravated battery charges pending. We note that such a substantial interval between assessment and trial may well justify a motion for further evaluation, but as we discuss later in this opinion, the burden remains on Defendant to raise a reasonable doubt as to competence with substantiated claims.

### D. The Issue of Reasonable Doubt

{33} Although it is not all that clear from Defendant's counsel's statements to the district court, it appears that counsel was requesting the court to determine that a reasonable doubt existed as to Defendant's present competency, thereby requiring the court to order an evaluation of Defendant as required under Rule 5–602(B)(2)(a). We reach our conclusions in this case based on the view that Defendant was making a request consistent with Section 31–9–1 and Rule 5–602(B)(2).

{34} Defendant's counsel presented aspects of Defendant's competency history, presented her recent observations regarding Defendant's mental state, asked the court to consider the second competency hearing evidence, and gave her opinion regarding Defendant's ability to consult and understand. Since nothing in the record or in argument indicates anything to the contrary, we assume that Defendant had time and opportunity before his battery trial to gather evidence concerning his present competency and was not precluded before trial from presenting whatever evidence he could gather.

{35} We conclude that the district court did not abuse its discretion in determining there was no reasonable doubt as to Defendant's competency. The evidence presented a borderline case for reasonable doubt. The history of Defendant's competency evaluations, determinations, and treatment did not necessarily reflect Defendant's present competency. The observations and conclusions of Defendant's counsel as to Defendant's ability to consult and understand were not supported by any affidavits or testimony regarding observations of Defendant's present abilities. "When there exist reasons both supporting and detracting from a trial court decision, there is no abuse of discretion." *Grant v. Cumiford*, 2005–NMCA–058, ¶ 13, 137 N.M. 485, 112 P.3d 1142 (internal quotation marks and citation omitted).

### II. The Court Was Not Required to Present the Issue of Defendant's Competency to the Jury

{36} Defendant argues that the issue concerning his competency should have been submitted to the jury. Specifically, he argues that "New Mexico law provides that even after a trial court has determined that a

defendant is competent, an accused is allowed to submit the question for ultimate determination to the jury, as long as there is evidence that raises a 'reasonable doubt' as to defendant's competency." This argument has no merit. First, the pretrial evidence Defendant presented did not raise a reasonable doubt as to Defendant's competency. *See* Rule 5–602(B)(2). Second, the record does not reflect that Defendant requested that UJI 14–5104 NMRA or the issue of competency be given to the jury. Finally, even if Defendant had requested that UJI 14–5104 be given or that the issue otherwise be submitted, no offer of proof was made at trial and no evidence was presented for jury consideration concerning Defendant's competency that would warrant giving the instruction to the jury. *See* Rule 5–602(B)(2)(a), (b); *State v. Nelson*, 96 N.M. 654, 657, 634 P.2d 676, 679 (1981) ("[T]he right to have a jury determination of competency attaches only where competency to stand trial is at issue and when a reasonable doubt is raised after the trial has begun but before it has ended.").

{37} Defendant by-passes the foregoing circumstances and law and asserts that he has a constitutional right to submit the issue of competency to the jury under *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Defendant contends that the district court's "finding" that Defendant was competent by a preponderance of evidence exposed Defendant to a greater deprivation of liberty and the "finding" of competency had to be made by a jury beyond a reasonable doubt.

{38} *Apprendi* held that the defendant's sentence for possession of a firearm, which was enhanced under a hate crimes penalty based on a preponderance of the evidence standard, violated the defendant's right to a jury determination that he was guilty of every element of the crime beyond a reasonable doubt. 530 U.S. at 476–77, 120 S.Ct. 2348. *Ring* concluded that a defendant is entitled to a jury determination, beyond a reasonable doubt, of any fact on which a legislature conditions an increase in the maximum punishment. 536 U.S. at 589, 122 S.Ct.

2428. That entitlement exists whether the aggravating factors are elements of an offense or constitute sentencing considerations. *Id.* at 588–89, 122 S.Ct. 2428.

{39} Defendant's argument is without merit. Competency to stand trial is not and does not act as an element of an offense. Nor does a competency determination enhance or increase a defendant's maximum sentence. This is illustrated in *State v. Flores*, 2004–NMSC–021, ¶¶ 7–8, 135 N.M. 759, 93 P.3d 1264, in which Defendant's interlocutory appeal in his murder case was certified to our Supreme Court on a question regarding execution of the mentally retarded. The Supreme Court "conclude[d] that the Sixth Amendment does not require the issue of a defendant's mental retardation in a capital prosecution to be proved to a jury beyond a reasonable doubt." *Id.* ¶ 8. Neither *Apprendi* nor *Ring* can be reasonably interpreted to apply to a competency determination.

### III. The District Court Did Not Err in Regard to Jury Instructions

{40} Defendant argues that the district court erred by giving a confusing excessive force jury instruction that both did not explain its relationship to the elements of the crime and improperly shifted the burden onto Defendant to prove excessive force.

{41} The district court instructed the jury on the elements of battery upon a peace officer. The instruction included each element of the offense including the elements of unlawfulness and absence of self-defense. The court also instructed the jury on the elements of self-defense. That instruction included the requirement that in order for the jury to find that Defendant acted in self-defense, it must find that he "was acting in response to the use of excessive force by the officer who was attempting to effect compliance with the officer's instructions." Both instructions placed the burden of proof on the State. In this way, both instructions complied with New Mexico law. *See State v. Parish*, 118 N.M. 39, 43–44, 878 P.2d 988, 992–93 (1994) (requiring that the instruction include the element of unlawfulness when self-defense is raised); *State v. Foxen*, 2001–NMCA–061, ¶ 8, 130 N.M. 670, 29 P.3d 1071

(requiring that the State must prove beyond a reasonable doubt that the defendant did not act in self-defense); *State v. Kraul,* 90 N.M. 314, 319, 563 P.2d 108, 113 (Ct.App. 1977) (requiring that the State must prove beyond a reasonable doubt that the defendant did not act in response to the use of excessive force).

{42} The instructions, which included all the necessary elements and burdens, and read together, conveyed to the jury that the claim of self-defense negates a specific element of battery upon a peace officer. The district court did not err in submitting these instructions to the jury.

**CONCLUSION**

{43} We affirm Defendant's conviction for aggravated battery on a peace officer.

{44} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and CYNTHIA A. FRY, Judges.