This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37149**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ALLEN I. TAPIA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Drew D. Tatum, District Judge**

Hector H. Balderas, Attorney General
Marko D. Hananel, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Aja Oishi, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**VARGAS, Judge.**

**{1}** Defendant Allen Tapia appeals his conviction for aggravated driving while under the influence of alcohol (DWI), raising two issues on appeal. First, Defendant contends that the district court erred when it denied his counsel's motion for a competency evaluation and failed to order an evaluation sua sponte. Second, Defendant argues that the district court committed fundamental error when it failed to instruct the jury on the meaning of "refusal" as it is used in the aggravated DWI uniform jury instruction. *See* UJI 14-4508(3) NMRA (requiring proof that "[t]he defendant refused to submit to

chemical testing"). Because Defendant failed to introduce evidence which raises a reasonable doubt as to Defendant's competency, and does not point to anything in the proceedings that would have alerted the district court that Defendant's competency was at issue, we conclude that the district court did not abuse its discretion when it denied Defendant's motion and did not sua sponte order a competency evaluation. Furthermore, we hold that because the refusal instruction is definitional, its omission is not fundamental error.  We affirm.

**{2}**     As this is a memorandum opinion and the parties are familiar with the facts of the case and the procedural background, we include the relevant background information only where relevant to the analysis. We address each of Defendant's arguments in turn.

## BACKGROUND

**{3}**     Clovis Police Department Officer Chris Caron pulled Defendant over after Officer Caron witnessed Defendant throw a blue beer can from his vehicle. When Officer Caron approached Defendant and confronted him about the beer can, Officer Caron smelled the odor of intoxicating liquor coming from the vehicle, saw Defendant had bloodshot and watery eyes, and noticed an unopened beer can in the middle console of Defendant's vehicle. Defendant denied that he threw the beer can, that he had been drinking, and that there was a beer can in his vehicle. Officer Caron asked Defendant to step out of the vehicle and attempted to conduct field sobriety tests, but Defendant refused and became very defensive. Based upon Officer Caron's belief that Defendant was impaired, Officer Caron placed Defendant under arrest and attempted to read the New Mexico Implied Consent Act to him. Defendant continually interrupted the reading, responding to Officer Caron's questions with demands that the discarded beer can be picked up, and refusing to submit to a breath test unless Officer Caron picked up the can. Defendant was subsequently charged with aggravated DWI for refusing to submit to the breath test. Prior to the trial, Defendant's counsel filed a motion requesting a forensic evaluation to assess Defendant's competency to stand trial. The district court denied the motion and proceeded with the trial, where Defendant was convicted of aggravated DWI. This appeal follows.

## Competency Evaluation

**{4}**     Defendant first argues that the district court deprived him of due process when it denied his motion for a competency evaluation and did not order a competency evaluation sua sponte. Defendant contends that his claims on appeal should be reviewed de novo, citing *State v. Montoya*, 2010-NMCA-067, ¶ 10, 148 N.M. 495, 238 P.3d 369 and *State v. Gutierrez*, 2015-NMCA-082, ¶¶ 9-10, 23, 355 P.3d 93, for the proposition that questions of whether a defendant was afforded procedural due process in competency determinations are reviewed de novo. However, rather than explain how the hearing on Defendant's motion to determine competency violated his due process rights, Defendant's brief addresses the sufficiency of the information presented to the district court to raise reasonable doubt as to Defendant's competency, arguing that Defendant "presented a prima facie case of incompetence" and the information

presented to the district court "provided good cause to authorize a competency evaluation." Consequently, the de novo standard set forth in *Montoya* and *Gutierrez* are inapplicable. Instead, "[w]e review the denial of a motion for a competency evaluation for an abuse of discretion." *State v. Flores*, 2005-NMCA-135, ¶ 20, 138 N.M. 636, 124 P.3d 1175; *State v. Herrera*, 2001-NMCA-073, ¶ 31, 131 N.M. 22, 33 P.3d 22 ("We review the district court's denial of the motion for a competency evaluation for an abuse of discretion."); *State v. Najar*, 1986-NMCA-068, ¶ 9, 104 N.M. 540, 724 P.2d 249 ("In reviewing the [district] court's determination that there is no reasonable doubt as to [the] defendant's competency to stand trial, the appellate standard is whether there has been an abuse of discretion.") "A district court abuses its discretion when its ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Rael,* 2008-NMCA-067, ¶ 6, 144 N.M. 170, 184 P.3d 1064 (internal quotation marks and citation omitted)

**{5}**     "It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Flores*, 2005-NMCA-135, ¶ 15 (internal quotation marks and citation omitted); *Herrera*, 2001-NMCA-073, ¶ 31 ("A criminal defendant is competent to stand trial if he understands the nature and significance of the proceedings, has a factual understanding of the charges, and is able to assist his attorney in his defense." (internal quotation marks and citation omitted)). In New Mexico, the law governing the determination of a defendant's competency to stand trial is set out in NMSA 1978, Sections 31-9-1 through 31-9-4 (1967, as amended through 1999), and at the time of Defendant's motion, the rule administering the law was found in Rule 5-602 NMRA (1991, amended 2019).[1]

**{6}**     Section 31-9-1 states, "Whenever it appears that there is a question as to the defendant's competency to proceed in a criminal case, any further proceeding in the cause shall be suspended until the issue is determined." "The issue of the defendant's competency to stand trial may be raised by motion, or upon the court's own motion, at any stage of the proceedings." Rule 5-602(B)(1). In this case, prior to the trial on Defendant's aggravated DWI charges, Defendant's counsel filed a motion requesting a forensic evaluation "to explore certain aspects of Defendant's mental condition." The district court then held a hearing to determine whether to grant the motion and order the evaluation.

**{7}**     Once an issue of competency to stand trial has been raised, the district court must determine whether "there is evidence which raises a reasonable doubt as to the defendant's competency to stand trial." Rule 5-602(B)(2). "In deciding whether reasonable doubt as to a defendant's competency exists, the judge must weigh the available evidence and make a decision based on that evidence." *Montoya*, 2010-NMCA-067, ¶ 14. The reasonable doubt of a defendant's competency is "not raised by

_____

[1] The provisions of the rule have since been recodified as Rule 5-602.1 NMRA (2019). As Defendant's motion was filed prior to the 2019 amendment, all references in this opinion to Rule 5-602 refer to the 1991 version of the rule.

an assertion of that issue, even though the assertion is in good faith." *Herrera,* 2001-NMCA-073, ¶ 33 (internal quotation marks and citation omitted). Instead, "the assertions must be substantiated, and must also establish reasonable cause for the belief that the defendant is not competent." *Id.* (internal quotation marks and citation omitted).

**{8}** In this case, Defendant's motion stated that "[c]ounsel is concerned that [Defendant did] not have the ability to assist with his case" and "[Defendant did] not have a rational or factual understanding of the case and the proceedings." Defendant's counsel, however, did not cite any specific instances or acts to support the assertions set out in the motion. Nor did the motion attach any affidavits or other evidence to support counsel's concerns. At the hearing on the motion, Defendant's counsel stated that her contact with Defendant had been limited, and she admitted she had copied the motion from a motion filed in another case by Defendant's prior counsel involving Defendant. Defendant's counsel conveyed some concerns relayed by Defendant's prior counsel, but provided no other information or evidence supporting the assertions set out in the motion. Taking into consideration the motion and the arguments presented in court, the district court found that "[r]easonable cause for a confidential forensic evaluation has not been shown" and denied the motion.

**{9}** Absent evidence raising a reasonable doubt as to Defendant's competency, we cannot conclude that the district court abused its discretion in denying Defendant's motion. Defendant's motion was limited to assertions of counsel, who admitted to limited interactions with Defendant and to "cop[ying] and past[ing]" the allegations from a motion filed in another case. We have held that "a court may consider defense counsel's observations and opinions, but that those observations and opinions alone cannot trigger reasonable doubt about the defendant's competency." *Flores*, 2005-NMCA-135, ¶ 29. We do not require "expert testimony in order to obtain an evaluation of [the defendant's] competency. . . . Instead, a defendant could offer an affidavit from someone who had observed the defendant and form[ed] an opinion about his . . . competency[.]" *Id.* ¶ 31.

**{10}** In *Herrera*, we held that a district court did not abuse its discretion when it denied defense counsel's motion for a competency evaluation even though counsel had asserted that the defendant had stopped eating, was hiding in his room, crying, taking antidepressants, drinking heavily, talking about committing suicide, attempted suicide, and was often heard talking incoherently to himself. 2001-NMCA-073, ¶ 32. Despite counsel's assertions, we nevertheless required that the motion be substantiated by some affidavit or documentary evidence. *Id.* ¶ 33.

**{11}** In this case, defense counsel's assertions were much less specific than those in *Herrera,* made upon limited personal knowledge, and unsupported by affidavits or other documentary evidence. Defendant's counsel did not meet her burden to show reasonable doubt as to Defendant's competency. Therefore, we conclude that the district court did not abuse its discretion in denying Defendant's motion.

**{12}** Defendant further argues that there was sufficient indicia of incompetency during and after trial that should have caused the district court to find reasonable doubt as to Defendant's competency and order a competency evaluation sua sponte. Defendant points to his actions and non-responsive answers during his arrest, arguing with the officer over the discarded beer can and Defendant's interactions with the district court during sentencing, inquiring about errors in paperwork he received related to his case. We disagree that these actions and responses constitute "evidence which raises a reasonable doubt as to [D]efendant's competency" that required the district court to order a competency evaluation sua sponte. Rule 5-602(B)(2).

**{13}** During his arrest, Defendant appeared to understand Officer Caron's questions and responded appropriately. When asked where he was coming from, he explained he was coming from his friend's house. After Officer Caron stated, "The [beer can] you threw out was opened," Defendant responded, "I didn't throw nothing, sir," and asked, "where was this can," requesting that the officer to point out the can he claimed Defendant had discarded. When asked for his driver's license and registration, he produced them for the officer. He responded appropriately when asked where he was coming from, where he was going and why he had stopped at the gas station where Officer Caron had pulled him over. When the officer noted that his eyes were red and bloodshot and advised that he wanted to administer some field sobriety tests to make sure Defendant was alright to drive, Defendant tried to explain why his eyes were red and bloodshot, telling the officer, "I've been working all day, since 4:00." It was not until Officer Caron advised him that he was under arrest for DWI that Defendant became non-responsive to the officer's questions and repeatedly demanded that the officer collect the beer can he was accused of discarding, telling the officer, "I want you to get that evidence." In light of Defendant's appropriate responses to Officer Caron's questions before he was placed under arrest, as well as his concern with preserving potential evidence, we cannot say that the district court abused its discretion when it did not sua sponte order a competency evaluation of Defendant based on Defendant's actions during his arrest.

**{14}** Defendant also claims that, at sentencing "[t]he district court was aware of [Defendant's mental impairment] because it repeatedly expressed that it did not understand what [Defendant] was talking about." Defendant misrepresents the events before the district court. During sentencing, Defendant addressed the district court, stating, "Yes, your honor, I've been having some paperwork here that . . . that's wrong and I want to know why it's been wrong, my paperwork." The district court responded, "Give me more details, I don't know what you're talking about." Defendant explained that information on paperwork he had in front of him contained inaccurate information about his weight, his social security number, and his race. Before reviewing the paperwork referenced by the Defendant, the district court stated, "I don't know what paperwork you're talking about.  Are you talking about prior DWI convictions," later repeating, "Again, Mr. Tapia, I don't know what you have." After the district court reviewed the paperwork Defendant had in his possession, the district court noted that it was the cover sheet from the police report and explained to Defendant that he could not explain why the police report contained inaccuracies.

**{15}** Defendant also points to his statement to the district court, "Well, I don't understand why. Why is it like that?" as evidence of reasonable doubt of his competency that should have triggered a sua sponte competency evaluation by the district court. Defendant claims that his comment was in response to his counsel's question about whether he wanted her to withdraw from the representation. A review of the record, however, indicates that Defendant's comment that he did not understand was a continuation of his discussion with the district court as to why there were errors in the cover sheet of the police report. After the district court reviewed the paperwork Defendant claimed was inaccurate, the following exchange took place before the district court:

> **Court:** So, this is the cover sheet for the police report.
>
> **Defendant:** And it says I'm a white Caucasian. I'm not a white Caucasian. I'm a missing person there, too.
>
> **Court:** Ok.
>
> **Defense counsel:** I guess, Mr. Tapia, I just need to know if you would like me to continue to represent you, or if you would like to proceed pro se.
>
> **Defendant:** I don't understand why. Why it's like that.
>
> **Court:** Well, Mr. Tapia, I cannot answer why the police report I didn't draft or nobody in this room I assume drafted.

Based on the discussion that preceded defense counsel's inquiry about whether she should withdraw, and the comments that followed the inquiry, it is clear that Defendant's comment "I don't understand why. Why it's like that," was a continuation of the discussion of the errors in the police report and the fact that it stated that Defendant was a white Caucasian rather than a response to the question interjected by his counsel about continued representation. Defendant points to nothing else in the proceedings that would have raised a reasonable doubt to the Defendant's competency and absent evidence of reasonable doubt about his competency, we see no error on the part of the district court.

**"Refusal" Jury Instruction**

**{16}** Defendant next argues that because his aggravated DWI charge was based on his refusal to submit to a chemical test under NMSA 1978, Section 66-8-102(D)(3) (2010, amended 2016), the jury should have been instructed on the meaning of "refusal." **[BIC 31]** Defendant, however, did not request a refusal instruction, nor did he object to its omission. Therefore, we review for fundamental error, only. *See State v. Cunningham*, 2000-NMSC-009, ¶ 11, 128 N.M. 711, 998 P.2d 176 (holding that where a defendant did not object to the jury instructions as given, the appellate court reviews only for fundamental error).

**{17}**    Fundamental error occurs "if there has been a miscarriage of justice, if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or if substantial justice has not been done." *State v. Sutphin*, 2007-NMSC-045, ¶ 16, 142 N.M. 191, 164 P.3d 72 (internal quotation marks and citation omitted). Under a fundamental error review, a conviction cannot stand if the error would work "a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *State v. Barber*, 2004-NMSC-019, ¶ 18, 135 N.M. 621, 92 P.3d 633 (internal quotation marks and citation omitted). Accordingly, we consider whether the omission of the refusal instruction resulted in a "fundamental unfairness in [the d]efendant's trial." *Id.* (internal quotation marks omitted)

**{18}**    Defendant makes two arguments in support of his claim that it was fundamental error to omit the refusal instruction. Defendant first contends that because Defendant's "aggravated DWI charge is based solely on refusal," the jury instruction on refusal was mandatory, pointing to Use Note 5 to UJI 14-4508, which states, "[i]nstruction 14-4510 [NMRA], the definition of refusal to submit to chemical testing, *must be given* immediately after" the aggravated DWI instruction. (Emphasis added.) We are not persuaded. "The language in a Use Note, like a definitional instruction, cannot elevate a jury instruction to the status of an essential element," even if mandatory. *State v. Doe*, 1983-NMSC-096, ¶ 8, 100 N.M. 481, 672 P.2d 654 (holding that failure to follow a use note does not automatically require reversal absent a defendant's request or objection); *see also State v. Stephens*, 1979-NMSC-076, ¶ 20, 93 N.M. 458, 601 P.2d 428 (concluding that the failure to give an unrequested instruction required by a use note is not fundamental error even though the use note requires it whenever causation is in issue), *overruled on other grounds by State v. Contreras*, 1995-NMSC-056, 120 N.M. 486, 903 P.2d 228; *State v. Padilla*, 1977-NMCA-055, ¶ 5, 90 N.M. 481, 565 P.2d 352 (declining to find error in the failure to give an unrequested instruction defining intent to kill or do great bodily harm despite mandatory use note).

**{19}**    Defendant next claims that the jury was misled because the absence of the refusal instruction "is akin to a missing elements instruction because it requires the jury to find multiple elements, at least three of which were in question here." "When reviewing jury instruction issues for fundamental error, we first apply the standard for reversible error by determining if a reasonable juror would have been confused or misdirected by the jury instructions that were given." *State v. Anderson*, 2016-NMCA-007, ¶ 9, 364 P.3d 306 (internal quotation marks and citation omitted). "Juror confusion or misdirection may stem from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *Id.* For an instruction to mislead, it must "omit essential elements or be so confusing . . . that a court cannot be certain that the jury found the essential elements." *State v. Caldwell*, 2008-NMCA-049, ¶ 24, 143 N.M. 792, 182 P.3d 775 (internal quotation marks and citations omitted). A "failure to instruct the jury on an essential element, as opposed to a definition, ordinarily is fundamental error even when the defendant fails to object or offer a curative instruction." *Barber*, 2004-NMSC-019, ¶ 20. By contrast, a missing definition, in most instances, "cannot result in the sort of 'fundamental unfairness' that undermines the integrity of the judicial system." *Id.* "If we determine that a reasonable juror would have

been confused or misdirected by the instructions given, our fundamental error analysis requires us to then review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the defendant's conviction was the result of a plain miscarriage of justice." *Anderson*, 2016-NMCA-007, ¶ 9. (alteration, internal quotation marks, and citation omitted).

{20}    Here, Defendant effectively claims that, without the refusal instruction, the jury was not provided "with an accurate rendition of the relevant law," *see id.* (internal quotation marks and citation omitted), because it was not directed to consider the five elements that make up "refusal" set out in UJI 14-4510. We disagree. Specifically, Defendant contends that, "[h]ad the jury been given the legal definition of refusal, it would have been required to decide . . . whether the arrest itself was reasonable; whether [Defendant] was conscious [or] otherwise capable of taking a test; and whether he willfully refused to submit to a breath or blood test." In this instance, the refusal instruction, including the elements Defendant points to, "merely amplify[ies] an element" in the aggravated DWI instruction rather than "provide[s] a determination critical to understanding the elements instruction." *Barber*, 2004-NMSC-019, ¶ 25.

{21}    Defendant first claims that the jury should have had the opportunity to consider whether "[D]efendant was arrested on reasonable grounds to believe that [D]efendant was driving while under the influence of intoxicating liquor or drugs." UJI 14-4510. Because a conviction for aggravated DWI requires that the jury actually find that the defendant "(1)  operated a motor vehicle; (2) [while under the influence of]  intoxicating liquor; that is, as a result of drinking liquor the defendant was less able to the slightest agree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person and the public[,]" UJI 14-4508, we cannot agree that the jury's understanding of the elements of aggravated DWI was deficient because it was not advised that Defendant's arrest must have been made "on reasonable grounds" to believe those facts. UJI 14-4510(1).

{22}    Defendant next contends that the jury should have been required to consider whether Defendant "was conscious and otherwise capable of submitting to a chemical test." UJI 14-4510(4). Again, we cannot conclude that the jury's understanding of UJI 14-4508 is deficient because it was not given the opportunity to consider this element of the refusal jury instruction. That a defendant would have to be conscious to refuse a chemical test and capable of submitting to the test does nothing more than augment the circumstances surrounding a defendant's refusal to submit to chemical testing. *See Barber*, 2004-NMSC-019, ¶ 24.

{23}    Defendant lastly claims that the jury should have been required to consider whether he "willfully refused to submit" to the chemical test. UJI 14-4510(5). To support his claim of jury misdirection, Defendant points out that "[t]he only question the jury asked during trial was whether [Defendant] had outright refused chem[ical testing][,]" or whether his refusal was conditional. However, "[a] conditional consent is a refusal to take the test." *Fugere v. N.M. Taxation & Revenue Dep't*, 1995-NMCA-040, ¶ 13, 120

N.M. 29, 897 P.2d 216. That Defendant's refusal was conditional is of no import and cannot serve as the basis of jury misdirection for purposes of fundamental error.

**{24}**    Because Defendant has failed to identify any juror confusion or misdirection stemming from the omission of the refusal instruction, we see no fundamental error.

**CONCLUSION**

**{25}**    We affirm.

**{26}    IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Judge**

**JACQUELINE R. MEDINA, Judge**