This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38335**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**LINZY GARCIA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Matthew E. Chandler, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Defendant Linzy Garcia appeals her convictions following a jury trial of one count of possession of a controlled substance (felony), contrary to NMSA 1978, Section 30-31-23(A) (2011, amended 2019), and one count of use or possession of drug paraphernalia (misdemeanor), contrary to NMSA 1978, Section 30-31-25.1(A) (2001, amended 2019). Defendant contends that the district court violated her due process rights in finding her competent to stand trial. We hold that, because Defendant presented sufficient evidence of her incompetency to trigger her procedural due process rights, the district court violated those rights when it summarily found her competent

without entering a written statement clarifying the evidence relied upon and reasons for the decision.

**{2}** In light of our holding, we do not reach Defendant's remaining arguments that the district court erred by refusing her request to present the issue of competency to the jury at trial; that her convictions violate double jeopardy; and that the district court deprived Defendant of her right to confront witnesses. *See Allen v. LeMaster*, 2012-NMSC-001, ¶ 28, 267 P.3d 806 (observing that "courts exercise judicial restraint by deciding cases on the narrowest possible grounds and avoid reaching unnecessary constitutional issues"). Our disposition is without prejudice to Defendant raising double jeopardy again in any future proceeding, should one commence. *See* NMSA 1978, § 30-1-10 (1963) ("The defense of double jeopardy may not be waived and may be raised by the accused at any stage of a criminal prosecution, either before or after judgment.").

## BACKGROUND

**{3}** Upon Defendant's motion requesting a forensic evaluation and the district court's order granting the request, an expert evaluated Defendant's competency to stand trial. As part of the competency evaluation, the expert administered a series of tests. Based on his evaluation, which included review of the tests administered, records review, and a clinical interview of Defendant, the expert prepared a report of his findings. The district court held a competency hearing on January 15, 2019, at which the expert's testimony and his report were the only evidence presented.

**{4}** The expert's report concluded that Defendant was "not competent to stand trial." The expert diagnosed Defendant with schizophrenia and indicated this illness would affect her competency. The expert testified that the results of Defendant's Evaluation of Competency to Stand Trial-Revised (ECST-R) test, which measures three factors related to an individual's competency to stand trial, "consistently showed significant impairment." For the first factor, "ability to [c]onsult with [c]ounsel," Defendant scored in the "very extremely impaired range." For the second factor, "[r]ational [u]nderstanding of the [c]ourtroom [p]roceedings," Defendant fell into the "extreme impairment range." For the third factor, "[f]actual [u]nderstanding of the [c]ourtroom [p]roceedings," Defendant fell into the "severe impairment range." At the competency hearing, the expert's testimony was consistent with these test results.

**{5}** Although the expert was concerned about whether Defendant was malingering, he noted that the test best suited to detect malingering indicated that she was not, assuaging his concerns. Specifically, the expert stated that he "had concerns all the way through [testing] about malingering," but clarified that the ECST-R, which "had the strongest research backing to assess someone's potential malingering . . . showed that overall [Defendant] tended to deny impairment versus emphasize it." The expert's report similarly stated that the ECST-R indicated Defendant "was not trying to emphasize or exaggerate her impairment[,]" and "[a]ll [ECST-R] scores indicated extreme to very extreme impairment in [Defendant's] ability to have a factual and rational understanding of her case as well as her ability to consult with her attorney."

**{6}** On cross-examination, the expert acknowledged that it might be possible for someone who had undergone multiple competency evaluations, as Defendant had, to manipulate the results of the evaluation, but offered no specific opinion regarding the likelihood that Defendant was manipulating the test results in this instance and did not change his opinion regarding whether Defendant was malingering. The expert also stated that, given Defendant's history of successful treatment with a particular antipsychotic medication, there was "a high likelihood" Defendant would become competent to stand trial if she took the proper course of medication. After its cross-examination, the State asked the district court to find Defendant competent based on questions about whether she was malingering, as well as the expert's testimony that Defendant would likely be competent if properly medicated.

**{7}** The district court reserved its ruling in order to review the expert's report before issuing its order. Later that day, the district court issued its competency order. The order stated in relevant part, "[T]he [c]ourt[,] having heard the testimony and review[ed] the report[,] . . . and being fully advised, FINDS . . . [t]hat Defendant is competent to stand trial." No further explanation of the district court's reasoning and/or the evidence on which it relied to reach its finding of competency were included in the order. Following her jury trial and conviction, Defendant appeals.

## DISCUSSION

**{8}** Defendant argues the district court violated her due process rights by rejecting, without explanation, the only evidence before it—expert findings and testimony concluding Defendant was not competent to stand trial. The State contends that (1) the case law requiring courts to provide a written statement clarifying the evidence relied upon for a competency determination is inapplicable to this case, (2) the district court was not required to enter written findings of fact and conclusions of law to support its ruling because a discernable basis existed to support the district court's conclusion, and (3) this Court must make all reasonable presumptions in support of the district court's ruling when the district court makes no findings of fact.

**{9}** While we review district court determinations of competency to stand trial for abuse of discretion, *State v. Linares*, 2017-NMSC-014, ¶ 23, 393 P.3d 691, "[w]e review questions of constitutional law and constitutional rights, such as due process protections, de novo." *State v. Montoya*, 2010-NMCA-067, ¶ 11, 148 N.M. 495, 238 P.3d 369.

**{10}** Under both the New Mexico and Federal Constitutions, "it is a violation of due process to prosecute a defendant who is incompetent to stand trial." *State v. Gutierrez*, 2015-NMCA-082, ¶ 9, 355 P.3d 93 (internal quotation marks and citation omitted); *see also State v. Flores*, 2005-NMCA-135, ¶ 15, 138 N.M. 636, 124 P.3d 1175 ("The failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him [or her] of his due process right to a fair trial." (alteration, internal quotation marks, and citation omitted)). "A person is competent to stand trial when he [or she] has sufficient present ability to consult with his

[or her] lawyer with a reasonable degree of rational understanding[,] . . . rational as well as factual understanding of the proceedings against him[ or her, and] . . . the capacity to assist in his [or her] own defense and to comprehend the reasons for punishment." *State v. Rotherham*, 1996-NMSC-048, ¶ 13, 122 N.M. 246, 923 P.2d 1131 (internal quotation marks and citations omitted).

**{11}** "[A] decision based on the record with a statement of reasons for the decision" is among the "essential elements of the adversary process, . . . which may be required as part of the due process afforded an individual." *Titus v. City of Albuquerque*, 2011-NMCA-038, ¶ 42, 149 N.M. 556, 252 P.3d 780 (internal quotation marks and citation omitted). "Competency determinations . . . implicate procedural due process rights . . . [and] require[] adequate notice, an adversarial hearing before an independent decision-maker, *and a written statement from the fact finder clarifying the evidence relied upon and reasons for the decision*." *Gutierrez*, 2015-NMCA-082, ¶ 10 (emphasis added) (citations omitted).

**{12}** Here, Defendant clearly "presented sufficient evidence of incompetency to trigger [her] procedural due process rights[.]" *See id.* ¶ 14. At the competency hearing, she "was required to show by a preponderance of the evidence that [she] was incompetent under the three-part incompetency test[,]" *id.*, and did so through the presentation of the lone expert's findings that Defendant fell into the extremely impaired, very extremely impaired, and severely impaired range on the factors courts must consider when making competency determinations, *see Rotherham*, 1996-NMSC-048, ¶ 13 (describing the three requisite factors); Defendant's schizophrenia diagnosis, which the expert indicated would have an effect on Defendant's competency; and expert testimony and findings stating that the test best suited to detect malingering indicated Defendant was not emphasizing or exaggerating her impairment.

**{13}** Having presented sufficient evidence of incompetency to trigger her due process rights, Defendant was entitled to know the evidence on which the district court relied and the reasons for its decision finding her competent. *See Gutierrez*, 2015-NMCA-082, ¶¶ 10, 14 (noting that evidence of incompetency that triggers procedural due process rights requires "a written statement from the fact finder clarifying the evidence relied upon and reasons for" a finding of competency). The only evidence presented at Defendant's competency hearing were the findings and testimony of a single expert, who concluded Defendant was not competent. Nonetheless, the district court summarily found Defendant competent to stand trial, without mention of "any of the three factors for determining competency that a valid decision would require[,]" without "findings of fact or conclusions of law that established an adequate basis for a ruling on competency[,]" and without a written statement "clarifying the evidence relied upon and reasons for" finding her competent to stand trial, as due process requires. *See id.* ¶¶ 10, 30.

**{14}** First, we address the State's arguments that the *Gutierrez* due process requirements for competency determinations—mandating written statements from the fact finder clarifying the evidence relied upon—are not applicable in this case because

of differences between the procedural history in *Gutierrez* and the procedural history in this case. In *Gutierrez*, the district court found the defendant competent, reversing, sua sponte and without notice to the defendant, a previous finding of incompetency. *Id.* ¶ 1. The *Gutierrez* Court concluded that the district court violated the defendant's procedural due process rights by failing to provide any justification for its competency decision, among other things. *Id.* ¶ 30. The *Gutierrez* Court, however, did not limit its conclusion or description of procedural due process requirements in a competency hearing to apply only to sua sponte reversals of previous decisions finding a defendant incompetent. *Id.* Rather, the *Gutierrez* Court plainly described competency determinations as proceedings that implicate procedural due process rights and therefore require "adequate notice, an adversarial hearing before an independent decision-maker, and a written statement from the fact finder clarifying the evidence relied upon and the reasons for the decision." *Id.* ¶ 10. Therefore, given the language in *Gutierrez*, which described requirements of competency hearings generally, and absent any limiting language to the contrary, we conclude that the procedural due process protections for competency hearings articulated in *Gutierrez* apply in the present case, despite the procedural differences.

**{15}** Second, we address the State's argument that despite the district court's failure to articulate any reasons for its finding of competency, this Court should affirm because there were two discernible bases for the district court's decision: (1) the expert's concerns about Defendant's potential malingering, and (2) the expert's testimony that there was a "high likelihood" Defendant would become competent if treated. Although the district court was certainly free to consider the State's arguments regarding malingering, because of the failure of the district court to enter a written decision with the factual basis for its competency finding, we are left to speculate regarding whether the malingering issue was a decisive one for the court.

**{16}** Additionally, a finding of competency based on the mere possibility of *future* competency would have been an improper basis for the district court's ruling. While New Mexico law allows for committing and/or treating certain individuals to attain competency, a finding of *incompetency* is required first. *See* NMSA 1978, § 31-9-1.2(B) (1999) ("When a district court determines that a [dangerous] defendant charged with a felony is incompetent . . . but does not dismiss the criminal case . . . the district court may commit the defendant . . . for treatment to attain competency."); *State v. Cantrell*, 2008-NMSC-016, ¶¶ 5, 21, 40, 143 N.M. 606, 179 P.3d 1214 (holding that a court may order certain incompetent defendants to submit to involuntary drug treatment to attain competency when it makes specific findings). Therefore, the possibility that Defendant could attain competency in the future with treatment would not be an appropriate basis for the district court's finding that Defendant was competent to stand trial. Even assuming that we could rely on the State's arguments at the hearing to clarify the basis of the district court's ruling, any finding based on potential future competency through treatment would be improper.

**{17}** Because one of the proposed bases would have been an improper ground for a finding of competency, and because the record gives no indication which—if either—of

the proposed bases the district court relied on, we can only speculate as to the basis and propriety of the district court's finding of competency. And because our review of this issue is de novo, *see Montoya*, 2010-NMCA-067, ¶ 11, we decline to rely on such speculation.

**{18}** Third, the State argues that when a district court makes no findings of fact, the general rule is that the appellate court "indulge[s] all presumptions in favor of the district court's ruling[,]" *State v. Jason L.*, 2000-NMSC-018, ¶ 11, 129 N.M. 119, 2 P.3d 856, which addresses suppression of evidence. However, even in the context of suppression rulings, this Court has noted "[o]ne constraint," *id.*, to that general rule: "We will not presume that the district court has rejected uncontradicted testimony." *State v. Gonzales*, 1999-NMCA-027, ¶ 16, 126 N.M. 742, 975 P.2d 355. Instead, when a district court does reject uncontradicted testimony, it should "indicate in the record the reasons for doing so." *Id.* (alteration, internal quotation marks, and citation omitted). Here, Defendant presented uncontradicted expert testimony that she was incompetent to stand trial, and the district court failed to indicate in the record any reasons for rejecting the testimony and finding her competent.

**{19}** In sum, while the district court in this case was not required to accept the expert's findings, *see State v. Jason F.*, 1998-NMSC-010, ¶ 29, 125 N.M. 111, 957 P.2d 1145, we conclude that Defendant "presented sufficient evidence of incompetency to trigger [her] procedural due process rights[.]" *See Gutierrez*, 2015-NMCA-082, ¶ 14. As a result, we hold that the district court was required to provide a "written statement . . . clarifying the evidence relied upon and reasons for the decision[,]" pursuant to the dictates of procedural due process, *id.* ¶ 10, and its failure to do so violated Defendant's constitutional right to procedural due process. *See id.* ¶ 42.

## CONCLUSION

**{20}** For the above reasons, we vacate Defendant's conviction and sentence, and remand to the district court for further proceedings consistent with this opinion. If, after a competency hearing, the district court finds Defendant competent, the district court must provide a written statement clarifying the evidence relied upon and reasons for its finding.

**{21}  IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**JANE B. YOHALEM, Judge**